(December 13, 1926.)

MABEL McCLAIN WHITE, Respondent, v. WILLIAM C. SMITH, as Administrator of the Estate of WILLIAM PETERSON, Deceased, et al., Appellants.

[253 Pac. 849.]

SPECIFIC PERFORMANCE—ORAL CONTRACT TO LEAVE PROPERTY—PART PERFORMANCE BY PROMISEE—CONSIDERATION—EVIDENCE—FINDINGS—DECREE OF DISTRIBUTION NOT CONCLUSIVE AS TO THIRD PERSON.

1. It is unnecessary to pass on assignment of error in allowing plaintiff to testify to making of oral contract with deceased, in view of correct finding, in effect sustaining the objection to the testimony admitted under reserved ruling, that the evidence was sufficient to sustain the court's finding of the contract, independent of such testimony.

2. It is enough to take out of the statute of frauds oral contract to leave property on death of promisor that promisee performed her part.

3. Oral contract to leave property on death of promisor was pleaded and proved with sufficient certainty and definiteness for specific performance, as one by which promisee was to go and live with promisor for the future as his child.

4. Evidence, in action for specific performance of oral contract to leave property on death of promisor, *held* to support findings of performance by promisee of her part.

5. Evidence, in action for specific performance of oral contract to leave property on death of promisor, *held* to support finding that any will so doing was lost or destroyed before promisor's death.

6. Decree of distribution of estate, which C. S., sec. 7730, declares conclusive as to rights of heirs, legatees or devisees, does not adjudicate title as against third person, and so does not prevent action by one belonging to neither of enumerated classes for specific performance of deceased's contract to will.

7. Evidence, in action for specific performance of deceased's contract to leave property at his death, *held* to sustain finding that he and his relatives were unaware of each other's continued existence.

8. For child who for seven years had lived with a man and his wife till they separated and were divorced to then go and live with the man as his child, instead of with the woman, as she would have preferred, was such a consideration for his promise to leave her at his death his property as to make specific performance thereof proper.

APPEAL from the District Court of the Sixth Judicial District, for Lemhi County. Hon. Ralph W. Adair, Judge.

Action for specific performance of a contract to leave property upon death. Judgment for respondent. *Affirmed.*

John H. Padgham and Richards & Haga, for Appellants.

The oral agreement claimed here must be proven with a degree of certainty which is utterly lacking in the evidence presented. (1 Moore on Facts, p. 152, vol. 2, p. 1291; vol. 3, p. 1304; *Rice v. Rigley*, 7 Ida. 115, 61 Pac. 290; *Rosenwald v. Middlebrook*, 188 Mo. 58, 86 S. W. 200; *Gall v. Gall*,

Publisher's Note.

2. Part performance of oral contract to devise property as taking case out of statute of frauds, see notes in 99 Am. St. 613; 102 Am. St. 241; 8 L. R. A. 415; 44 L. R. A., N. S., 748. See, also, 25 R. C. L. 588.

8. See 25 R. C. L. 312.

See Appeal and Error, 4 C. J., sec. 2541, p. 651, n. 39.

Executors and Administrators, 24 C. J., sec. 1400, p. 529, n. 2.

Frauds, Statute of, 27 C. J., sec. 430, p. 350, n. 56.

Specific Performance, 36 Cyc., p. 673, n. 39; p. 774, n. 57; p. 784, n. 15 New.

Wills, 40 Cyc., p. 1072, n. 31, 32.

64 Hun, 601, 19 N. Y. Supp. 332; *Wallace v. Rappeleye,* 103 Ill. 229; *Forsyth v. Heward,* 41 Nev. 305, 170 Pac. 21; *Monsen v. Monsen,* 174 Cal. 97, 162 Pac. 90.)

Where oral contracts of the kind relied upon by respondent have not been declared void under the statute of frauds, the courts have uniformly viewed them with suspicion, for the lips of the deceased are closed by death. (*In re Healy's Estate,* 6 Cal. Unrep. 780, 66 Pac. 175; *Russell v. Agar,* 121 Cal. 396, 66 Am. St. 35, 53 Pac. 926; *In re Hayden's Estate,* 1 Cal. App. 75, 81 Pac. 668; *Shahan v. Swan,* 48 Ohio St. 25, 29 Am. St. 517, 26 N. E. 222.)

A parol agreement to leave property by will in order to be specifically enforced must be fair and equitable and founded on substantial consideration. (*Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743, 9 L. R. A., N. S., 229; *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572; *Baumann v. Kusian,* 164 Cal. 582, 129 Pac. 986, 44 L. R. A., N. S., 756; *Christin v. Clark,* 36 Cal. App. 714, 173 Pac. 109; *Kurtz v. De Johnson,* 42 Cal. App. 221, 183 Pac. 588.)

In order to obtain specific performance of a contract, there must be mutuality of obligation from the inception of the contract, and of remedy. (*Hart v. Turner,* 39 Ida. 50, 226 Pac. 282; *Zaring v. Lavatta,* 36 Ida. 459, 211 Pac. 557; *Childs v. Reed,* 34 Ida. 450, 202 Pac. 685; *Moody v. Crane,* 34 Ida. 103, 199 Pac. 652.)

An agreement to will or leave property upon death in consideration of services rendered will not be implied from the rendering of such services. (*Walker v. Taylor,* 28 Colo. 233, 64 Pac. 192, and cases cited; *Ruble v. Richardson,* 188 Cal. 150, 204 Pac. 572.)

"Contracts of this kind are generally not favored, and when oral must be supported by strong, clear, and satisfactory evidence; they must be based upon a valuable consideration; their terms must be reasonably certain as to subject matter, as to their stipulations, their purposes, their parties, and the circumstances under which they were made. Waterman on Specific Performance of Contracts, p. 52; 4 Pomeroy, Eq. Jur., sec. 1405." (*Sanger v. Huguenel,* 65

Mont. 236, 211 Pac. 349; *Leadbetter v. Price,* 103 Or. 222, 202 Pac. 104; *Blanc v. O'Connor,* 167 Cal. 719, 141 Pac. 217; *Bedal v. Johnson,* 37 Ida. 359, 218 Pac. 641.)

Whitcomb, Cowen & Clark, for Respondent.

The contract alleged and proven in this case was a mutual and enforceable agreement and not within the statute of frauds prohibiting the enforcement of oral contracts. (*Bedal v. Johnson,* 37 Ida. 359, 218 Pac. 641; *Burns v. Smith,* 21 Mont. 251, 69 Am. St. 653, 53 Pac. 742; *Steinberger v. Young,* 175 Cal. 81, 165 Pac. 432; *Furman v. Craine,* 18 Cal. App. 41, 121 Pac. 1007; *Van Natta v. Heywood,* 57 Utah, 376, 195 Pac. 192; *Worden v. Worden,* 96 Wash. 592, 165 Pac. 501; *Dillon v. Gray,* 87 Kan. 129, 123 Pac. 878; *Kofka v. Rosicky,* 41 Neb. 328, 43 Am. St. 685, 59 N. W. 788, 25 L. R. A. 207; *Svanberg v. Fosseen,* 75 Minn. 350, 74 Am. St. 490, 78 N. W. 4, 43 L. R. A. 427; *Sharkey v. McDermott,* 91 Mo. 647, 60 Am. Rep. 270, 4 S. W. 107; *Wright v. Wright,* 99 Mich. 170, 58 N. W. 54, 23 L. R. A. 196; *Johnson v. Hubbell,* 10 N. J. Eq. 332, 66 Am. Dec. 773; *Godine v. Kidd,* 64 Hun, 585, 19 N. Y. Supp. 335; *Bless v. Blizzard,* 86 Kan. 230, 120 Pac. 351.)

The evidence in this case was amply sufficient to sustain the contention of the plaintiff independently of her own testimony. (*Brown v. Sutton,* 129 U. S. 238, 9 Sup. Ct. 273, 32 L. ed. 664; *Steinberger v. Young, supra.*)

It was in the power of the defendants either to produce the will of Mr. Peterson, explain its loss or destruction, or prove the contents in case of loss. They did neither of these things.

"The failure of a party to produce evidence in his power in elucidation of the subject matter in dispute raises a presumption against him." (*Kirby v. Tallmadge,* 160 U. S. 379, 16 Sup. Ct. 349, 40 L. ed. 463, Ann. Cas. 1914A, p. 909; 10 R. C. L. 888, note 6; *Runkle v. Burnham,* 153 U. S. 216, 14 Sup. Ct. 837, 38 L. ed. 694.)

GIVENS, J.—This action was instituted by respondent against William C. Smith, administrator of the estate of William Peterson, deceased, and his legal heirs, for the specific performance of an alleged oral agreement whereby the deceased was to make provision for respondent to inherit all his property in consideration that she come and make her home with him. Shortly after her mother's death, in 1903, respondent, then being nine years old, went to live with the Petersons, where she lived until 1910, when the deceased and his wife separated and were divorced. Thereafter respondent made her home with the deceased until some time prior to his death in 1918. The only child of the Petersons died a short time prior to their divorce and the only remaining heirs are distant relatives. The court made and entered its decree appointing a commissioner and directed him to convey the real and personal property of the deceased, after payment of all debts, claims and expenses, to the respondent. The appeal is from this decree.

. [1] Appellants' first contention is that the court erred in permitting respondent to testify, over their objection, as to any matter or fact occurring prior to the death of the deceased, namely, to the making of the oral contract upon which the action was brought, and in denying appellants' motion to strike such testimony. Such testimony was admitted under a reserved ruling and the eighth finding of fact by the court is as follows:

"The court further finds that objection was made by the defendants to the admission of the testimony of the plaintiff in reference to the terms of the contract between herself and William Peterson, and the court refused to strike the same upon motion by the defendants, but the court finds that in the determination of this matter, that the evidence is sufficient to sustain the contract between the plaintiff and defendant, independent of the testimony of the plaintiff, and that the testimony, of the plaintiff in reference to other material matters is corroborated by other evidence, sufficient when taken by itself, to base the findings upon."

By reason of this finding of the court, which in effect sustained the objection to such testimony, and the conclusion reached herein it is unnecessary to pass upon such assignments of error.

[2] Appellants also contend that there is not sufficient performance to take the alleged oral contract out of the operation of the statute of frauds. As said in *Bedal v. Johnson,* 37 Ida. 359, at 375, 218 Pac. 641: "We believe that the weight of authority supports the view that an oral contract to leave property to another on the death of the promisor does not come within the inhibition of the statute of frauds where there has been part performance thereof on the part of the promisee and the one for whose benefit the contract was made." (27 C. J. 350, sec. 430.) Thus whether or not the contract was within the operation of the statute of frauds is dependent upon the evidence, which will be considered hereafter.

[3] Appellants urge that the contract alleged was not pleaded or proved with sufficient certainty and definiteness to entitle respondent to specific performance for the reason that it is not apparent from the pleading whether respondent was to live with the decedent for a day, week or year or in what capacity or what service she was to render. The amended complaint with reference to the oral contract was as follows:

" .... both he and his wife went to Pocatello to visit this plaintiff and ascertain which one of the two the plaintiff would elect to make her home with thereafter; that said Jessie M. Peterson had theretofore acted as a mother toward this plaintiff, had treated her with the utmost kindness and consideration, and as a member of her household had behaved toward the plaintiff as she would towards a child of her own, and plaintiff's preference was to make her home with the said Jessie M. Peterson for the future, but the said William Peterson desired the plaintiff to go with him, and as an inducement thereto he promised to this plaintiff that if she would go and live with him (he would make provision for her to inherit his property), that he

would provide her with a home, and see that she was properly educated and would make provision for her to inherit all his property at his death, assuring plaintiff that since his son Harold had died, and his separation from his wife, he felt that he had no one to live for except his little girl (referring to plaintiff) . . . . ''

From this portion of the pleading it is very clear that the whole idea of the trip to Pocatello and the contract that arose at that time was for the purpose of ascertaining with whom respondent would thereafter live. No mention is made in the pleading or in the evidence to support the oral contract that respondent was to render any special menial service or care, and the only logical conclusion to be drawn is that respondent was to go and live with the deceased for the future as a child of the deceased.

In line with the above assignment appellants contend that the court erred in finding No. 4, ''that the decedent offered respondent that if she would make her home with him 'for the future' he would make a home for her, educate her and leave his property to her,'' for the reason that there is no evidence to support the finding and that it is contrary to the contract alleged. As stated above it is apparent that deceased wished respondent to make her home with him ''for the future'' and the inclusion of these words in the finding does not appear to be either erroneous or unwarranted. N. E. McCurry, a former resident of Salmon, where the deceased resided, and an uninterested party, testified as follows with respect to the agreement:

''Well, Mr. Peterson told me that he and Mrs. Peterson when they separated that Miss McClain was given her choice to go with Mrs. Peterson, or with himself. If she went with Mr. Peterson, he would educate her as his own child, and would give her what he had.''

H. H. Boomer, a friend of Mr. Peterson and also a disinterested witness, testified in part as follows:

'' . . . . and I listened to him and every once in awhile he would get back to the main subject that he had parted with his wife; that they had agreed to raise Mabel, and that

his boy died; and during the conversation I remember very distinctly that I asked him if he had made a will. He told me that day that all of his property went to Mabel; that he had agreed at the time of the divorce to take care of Mabel if she would come and live with him, and raise her as his own child, and he had sent her to school. Well, anyway after going over that agreement, I forget all of it, I remember of asking him if he had made a will. It kinda struck me; and he told me, had told me before that she hadn't been adopted, but they had made this agreement, they would raise her if she lived with them and he said he had made a will."

W. H. Shoup, of Salmon, whose father was at one time associated in the cattle business with the deceased, testified that he had many conversations with respect to respondent with the deceased and testified further that:

"Q. Did he ever tell you what he had promised her at Pocatello; did he ever mention his interview at Pocatello with Mabel?

"A. Oh, yes. As I remember that if she went with him she was to finish her education, or give her whatever education he thought she needed, her home was to be with him, and when he died he had made arrangements that Mabel was to receive everything he had."

James L. Kirtley, of Salmon, testified he had known the deceased ever since he could remember anybody and was very well acquainted with him, and with reference to the agreement testified as follows:

"I was coming thru Pocatello, and between trains while I waited I met Mr. Peterson at the Bannock Hotel, and asked him why he was there, or if he was going somewhere, and he told me that occasion that Mabel was graduating at the Academy, and that he was down to see her graduate, and he discussed the matter all over again—told me about what he told Mabel at the time of the entrainment (estrangement) of himself and his wife; that if she would stay with him that he would take care of her, and see that she was

properly clothed and schooled, and would have what he possessed when he died, . . . . ''

The deposition of Newton Hibbs, a neighbor and friend of Mr. Peterson, contained the following:

''Mr. Peterson told me that he had promised to give Mabel all of his property, if she would remain with him and not leave him to live with Mrs. Peterson, from whom he had been divorced.''

While a contract to leave by will must be proved by clear and satisfactory evidence, especially when the contract is oral (40 Cyc. 1072), this does not mean that the proof must be so clear as to exclude any controversy over the evidence. (*Bird v. Jacobus,* 113 Iowa, 194, 84 N. W. 1062.) This court has said in *Bedal v. Johnson, supra,* that:

''The rule, as we understand it, is that while it is a prerequisite to the specific enforcement of such a contract that both its existence and its terms be proved by clear and convincing evidence, the clearness and convincing force of the evidence is a question primarily for the trial court, and if the trial court finds on substantial evidence, or on conflicting evidence, that the contract was made and is definite and certain, such finding of fact will not be disturbed on appeal.''

It is apparent from the foregoing excerpts from the testimony that such an oral contract was made and this testimony is corroborated by practically every witness who testified, their testimony being to the effect that on numerous occasions the deceased had expressed his intention of leaving his property to respondent. Furthermore there is no evidence in the record contrary to the fact that such oral contract had been made. The finding was based upon substantial and uncontradicted testimony and will not be disturbed.

[4] It is urged by appellants that finding No. 5, wherein the court found that ''at the close of the school term, the plaintiff returned to the home of the said William Peterson and continued to reside with him until about the year 1917,'' was erroneous, for the reason that it is contrary to the

proof. It appears from the record that respondent was attending the Academy at Pocatello at the time of the separation of Mr. and Mrs. Peterson about the fall of 1910, and several witnesses testified that respondent lived with Mr. Peterson until she grew up. James L. Kirtley testified that he was familiar with the fact that respondent lived with Mr. Peterson after the separation of himself and wife. Newton J. Hibbs, who lived close to Mr. Peterson in Salmon, testified that he was very intimately acquainted with Mr. Peterson and that respondent came to live with his family during the fall of 1917 and 1918, immediately after she left the Peterson home, and that she came directly to his home when she left the Peterson home, for the reason that Mr. Peterson had closed his house in town. There was other testimony in the record to the effect that respondent went to live with the Hibbs in 1916. In any event, from the record it is apparent that it was some time in 1916 or 1917, and this finding stating that she resided with him until about the year 1917 was based upon substantial evidence, and if there was any conflict it was very slight and not sufficient to vitiate this finding.

Appellants' eighth assignment of error is as follows:

"The Court erred in its finding of fact No. 6 and in finding and holding that Respondent continued to live with decedent for a period of seven years and that she gave up her association with Mrs. Peterson apparently with the consent of decedent and that she absented herself from decedent's home for a year prior to his death, and that Respondent did and performed all things to be performed by her, such finding being contrary to the evidence."

Respondent lived with the deceased from the time of the separation of the Petersons, or the end of the school term some time in 1910, until she went to live with Hibbs, which, as stated above, Hibbs said was in the fall of 1917, which would be approximately seven years. The finding further states that respondent gave up her association with Mrs. Peterson, except for an occasional meeting upon the streets in Salmon, which is supported by the testimony of Mrs.

Daniels, former wife of the deceased, and one visit to the home of Mrs. Peterson, which was apparently made with the consent of Mr. Peterson, Mrs. Daniels testifying that on this visit respondent rode with her from the door of Mr. Peterson's house and that he saw her go out. There was further testimony that the deceased had never changed his attitude toward respondent at any time. During the fall of 1917 and in 1918 up until the time of Mr. Peterson's death in that year respondent lived with the Hibbs family, Mr. Hibbs testifying in this respect as follows:

"She came directly to our home when she left the Peterson home. I remember this fact because she said Mr. Peterson had closed his house in town and told her it would be necessary to find board and lodging until he returned, and provided a home for her. The plaintiff said when she came to our home that Mr. Peterson had gone to his ranch on Geertson Creek to remain for an indefinite period."

The finding No. 6 was, therefore, not erroneous.

[5] Appellants contend that the court erred in its finding No. 7 and in holding that decedent failed to perform the alleged agreement or that the will was lost. Finding No. 7 was as follows:

"The court also finds that the said William Peterson failed to comply with all of his part of such agreement, by his failure to make a will in plaintiff's favor, or to make other provision for her to inherit his property, as by him agreed to be done, or if such will was ever made, that the same was lost or destroyed prior to his death."

If deceased did agree that he would make provision for respondent to inherit all his property, which, as stated herein, the court found upon substantial evidence, either such provision was never complied with or the deceased did not perform his part of the agreement *in toto,* or if such provision was made by will the will has not been produced. There was·testimony that deceased had made three or four wills and that all had been destroyed with one exception, Quarles, who drew some or all of these wills, stating that he

did not know what became of the last will. The only logical conclusion to be drawn, there being no evidence to the contrary and the will not having been produced or accounted for in any manner, is that the last will of the deceased was either lost or destroyed, and it does not appear that such finding was erroneous.

[6] Appellants contend that the court erred in permitting the decree of the probate court, which had become final, to be collaterally attacked by respondent herein, and in finding in effect that the appellants' claim under the family name of Funch, which they assert was the family name of the deceased Peterson, and the facts from which such relationship is established, are of doubtful and uncertain character, and do not present any equity to this court equal to the equity of respondent as a claimant to the estate. No authorities have been cited either for or in opposition to this proposition and the argument is rather vague. A person may sue in equity to establish a contract to will property and to prevent a conveyance of the property to another. (*Van Horn v. Demarest*, 76 N. J. Eq. 386, 77 Atl. 354; *In re Cloucester's Estate*, 11 N. Y. Supp. 899.)

As said in *Heath v. Heath*, 18 Misc. Rep. 521, 522, 42 N. Y. Supp. 1078, at 1088:

"Orin Heath's parol agreement that the plaintiff should, at his death, have all his property, subject to the interest of his widow, made in consideration of the adoption of the plaintiff, and her living with him as his daughter, was valid, and imposed a trust upon such property, binding upon the heirs, devisees, and even purchasers with notice, which is enforceable in a court of equity. (*Gall v. Gall*, 64 Hun, 601, 19 N. Y. Supp. 332; Id., 29 Abb. N. C. 19, and note (19 N. Y. Supp. 332); *Godine v. Kidd*, 64 Hun, 585, 19 N. Y. Supp. 335; *Sherman v. Scott*, 27 Hun, 331; *Parsell v. Stryker*, 41 N. Y. 480; *Schutt v. Society*, 41 N. J. Eq. 115, 3 Atl. 398; *Roehl v. Haumesser*, 114 Ind. 311, 15 N. E. 345; *Sharkey v. McDermott*, 91 Mo. 647, 60 Am. Rep. 270, 4 S. W. 107.)"

The court further saying in *Heath v. Heath, supra:*

"The surrogate had no jurisdiction to decline to probate or to revoke the probate of the will on account of the parol agreement with respect to the title to the property purporting to be devised by the will, and consequently the probate of the will is not an obstacle to this action."

In *Rogers v. Schlotterback,* 167 Cal. 35, 138 Pac. 728, a suit in equity was brought for specific performance of an alleged oral contract, by which one Rogers and wife agreed to raise, educate and make plaintiff an heir, provided they were given exclusive custody and charge of the infant. The facts therein were nearly identical with those herein, with the exception that therein a will had been made after the oral agreement, in which plaintiff was left the sum of $5, which was much less than his share under the oral contract. The will was admitted to probate and a decree of distribution made. The court said in regard to the phase of the question similar to the one raised by this assignment as follows:

"It is claimed that the cause of action is barred by sections 1666 and 1667 of the Code of Civil Procedure. These sections relate to the conclusiveness of the decree of distribution 'as to the rights of heirs, legatees, or devisees.' W. H. Rogers had conveyed all his land in his lifetime to defendants, Mrs. Carter and Mrs. Schlotterback. The estate distributed consisted entirely of money. Creditors, or persons other than the class referred to in the statute, having equitable claims against the heirs, legatees, or devisees, are not concluded by the decree of distribution. (*Estate of Crooks,* 125 Cal. 459, 58 Pac. 89; *Barnard v. Wilson,* 74 Cal. 512, 16 Pac. 307; *More v. More,* 133 Cal. 489, 65 Pac. 1044, 66 Pac. 76; *Jenner v. Murphy,* 6 Cal. App. 434, 92 Pac. 405; *Hopkins v. White* (on rehearing), 20 Cal. App. 234, 128 Pac. 780.) Plaintiffs are not claiming under the will of W. H. Rogers; they are claiming under the contract of their ancestor with him and in hostility to the will and distribution under it and the deed made by W. H. Rogers."

Section 1666, Code of Civil Procedure of California, is identical with Idaho C. S., sec. 7730, which so far as pertinent herein reads as follows:

" . . . . Such order or decree is conclusive as to the rights of heirs, legatees, or devisees, . . . . "

This court in considering this section said in *Miller v. Mitcham*, 21 Ida. 741, 123 Pac. 141:

"The decree of distribution of the estate has become a final judgment and decree to the extent of determining that all the interest that the estate had in certain property shall pass and be distributed to the heirs of the deceased. This decree of distribution, however, does not settle or quiet the title to that property or determine the extent of the interest or title which the estate had in the property. That question can only be determined in a direct action, either between the estate and the party claiming an interest to the property, or between the heirs to whom distribution has been made and such party. In other words, a decree of distribution is not a decree affecting or adjudicating the title to the property as between the estate or heirs to the estate and any third party."

Plaintiff herein is not an heir, devisee or legatee of the deceased, but brings this action based upon an oral contract, against the heirs and executor. The decree of the probate court determining the heirs and their respective shares in the estate was not conclusive and did not adjudicate the rights of respondent under the oral contract. The action herein did not affect the decree of the probate court as such.

[7] Appellants' eleventh assignment of error is to the effect that the court erred in finding that decedent and his relatives were unaware of each other's continued existence, for the reason that it is contrary to the evidence. From the testimony of McCurry, it appeared that the deceased had made one trip back to Denmark a number of years ago and that deceased had told him his father and mother were dead and that all he had left was his little girl. Several witnesses testified that the deceased had told them that he

had no relatives and that all he had left was respondent. Mrs. Daniels, former wife of deceased, a witness for the appellants, testified that in her some twenty-three years of married life with Mr. Peterson he did not to her knowledge correspond with any relatives nor did they correspond with him. Quarles, decedent's legal adviser, a witness for appellants, testified that to his knowledge the deceased did not visit any of his relatives nor did any of them visit him during the time he lived in Salmon. From such evidence it does not appear that this finding was so erroneous or unwarranted as to authorize a reversal of the case or that if false it would mitigate against the conclusion reached.

[8] It is contended by appellants that in any event respondent cannot have specific performance, for the reason that the contract was not just and not based upon a sufficient consideration and that there is an entire lack of mutuality. Whether equity will decree specific performance of such a contract rests entirely in judicial discretion, and upon the facts of the particular case. (*Hennessy v. Woolworth,* 128 U. S. 438, 9 Sup. Ct. 109, 32 L. ed. 500; *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743, 9 L. R. A., N. S., 229.)

In the latter case the court said:

"When a definite contract to leave property by will has been clearly and certainly established, and there has been performance on the part of the promisee, equity will grant relief, provided the case is free from objection on account of inadequacy of consideration and there are no circumstances or conditions which render the claim inequitable. This is the general doctrine adhered to by the courts."

The law on this subject is well considered in *McCabe v. Healy,* 138 Cal. 81, 70 Pac. 1008, wherein the court says:

"The principle of law invoked by this bill cannot be gainsaid, and it is well stated by Prof. Pomeroy in his work on Specific Performance (page 268) in this language: 'Courts of equity will, under special circumstances, enforce a contract to make a will, or to make a certain testamentary dis-

position; and this may be done even when the agreement was parol, where in reliance upon the contract, the promisee has changed his condition and relations so that a refusal to complete the agreement would be a fraud upon him. The relief is granted, not by ordering a will to be made, but by regarding the property in the hands of the heirs, devisees, assignees or representatives of the deceased promisor as impressed with a trust in favor of the plaintiff, and by compelling defendant, who must, of course, belong to some of these classes of persons, to make such a disposition of the property as will carry out the intent of the agreement.' ''

There are no innocent third parties herein who will be affected by the specific performance of this oral contract; thus that phase need not be considered. By the contract alleged and proved respondent agreed to live with Mr. Peterson. At the time the contract was entered into respondent was approximately sixteen years of age and she testified that she would rather have gone to live with Mrs. Peterson, as she had been a foster-mother to her. Just what respondent did give up cannot be actually measured, but it is worthy of consideration that a girl of this age would very likely desire the companionship of a woman and especially a woman who had acted as a foster-mother to her for some six years prior to that time. Counsel for appellants contend that respondent having lived in the Peterson home for several years did not give up anything by continuing to live there. The house and furnishings were probably much the same after Mrs. Peterson had left as they were before, but it would not be the same home that respondent had lived in before with the personality of Mrs. Peterson gone. From all the testimony it is shown that deceased did not want respondent for any sort of menial service alone, and that question is not presented by the pleadings, but that he wanted her to brighten his life and to take her place in his home as his own child, and the deceased was the best judge of the value of these things.

48 Idaho—24

The loss to respondent of the companionship of Mrs. Peterson and the value to the deceased of respondent living with him cannot be measured or compensated for in money, and such pay was not contemplated by deceased. As said in *Burns v. Smith*, 21 Mont. 251, 69 Am. St. 653, 53 Pac. 742:

"We come to this conclusion more readily as we are of the opinion that the parties to the alleged contract never contemplated that the services of plaintiff were to be or could be compensated in money, and because the parties cannot now be placed *in statu . quo*. Besides there are no intervening rights of third parties or innocent holders of the estate involved. . . . . We think . such disposition of the case is but the carrying out of the cherished intention and desire and contract of the deceased in relation to his estate. The deceased had the right to dispose of his property as he pleased; and his contract to dispose of it, when free from fraud, imposition, and surprise, and being reasonable and moral, will be carried out and enforced by a court of equity. This is equity. This is right. It is real justice to carry out and enforce such contracts according to the intention of the parties in such cases."

It was clearly established that deceased made the contract and that the respondent had performed her part, and while the services performed in the home by respondent in the way of household duties might possibly have been compensated in money, those things that respondent gave up and the value of respondent living with the deceased as his child are impossible of measurement in money value and the respondent cannot be placed *in statu quo*. The only way possible of compensating respondent is by specific performance of the contract or doing what the decedent wished and agreed to do, and the court did not err in decreeing specific performance of the contract.

From what has been said it follows that the eighth finding of the court to the effect that independent of the testimony of respondent there was sufficient testimony in the record upon which to base the court's findings was correct and that appellants' motion for nonsuit was properly denied,

Points Decided.

·The judgment of the trial court is ordered affirmed. Costs awarded to respondent.

Wm. E. Lee, C. J., and Budge and T. Bailey Lee, JJ., concur.

Taylor, J., dissents.

Petition for rehearing denied.