(No. 6473.   August 1, 1938.)

W. H. BRUMMUND, Respondent, v. MYRON L. ROMIG and GRACE B. ROMIG, Husband and Wife, MINNIE I. CURTIS, RONALD ROMIG and GEORGE V. CURTIS, Appellants.

[81 Pac. (2d) 1085.]

Abe Goff and Herman Welker, for Appellants.

314

Feeney, Belknap & McQuade, for Respondent.

AILSHIE, J.—February 20, 1922, appellants, Myron L. Romig, Grace B. Romig (husband and wife) and Minnie I. Curtis (mother of the latter) executed and delivered their promissory note to respondent in the sum of $1200 and secured same by a mortgage on 654 acres of land in the Salmon River section of Idaho county. Payments of interest were made amounting to $1161.20, the last payment being made September 14, 1932. March 7, 1927, appellant Minnie I. Curtis, by deed of gift, conveyed to her son, George V. Curtis, and daughter, Grace B. Romig, certain residence property at 115 East D Street in Moscow. The deed was not recorded until June 17, 1935. As evidenced by canceled checks, admitted as exhibits in the case, Ronald Romig paid to his father, from November 6, 1932, to December 15, 1936, various sums amounting in all to $2,431.78. He helped his father build the house on the Moscow property and assumed a building and loan mortgage of $2,500, making payments each year. June 7, 1935, warranty deed to the property was given to him by his parents, Myron L. and Grace B. Romig.

This property was rented to Gale Mix who resided on it for three years, paying a monthly rental of $30. The rental was paid by check to M. L. Romig; canceled checks exhibited for months of June and December, 1935. Mix testified that he did not know the property was owned by Ronald Romig, or that the elder Romigs were acting as Ronald's agents. October 27, 1936, the property was damaged by fire and November 12th and 17th, following, checks for $500 and $1,000, respectively were issued to Mrs. Curtis to cover the fire loss; but she and Mrs. Romig both testified that she never received any money as a result of the fire, and had nothing to do with the checks; that she signed a release from the policy of insurance and that her daughter made the repairs on the house. The daughter testified that she cashed the check but her mother signed it; that the check "went directly to repairing the house," for a "new roof and basement and some windows." The insurance agent testified that the proof of loss following the fire was signed by Mrs. Curtis, but the check was delivered to Mrs. Romig and all dealings were with her; that he didn't see Mrs. Curtis.

As to the taxes paid on this property, an assistant to treasurer of Latah county testified that the Moscow land stood in the name of Ronald C. Romig; that the taxes were paid by Myron L. Romig. The final tax receipt shows that the property was assessed to Grace B. Romig and the Permanent Building & Loan Association; that the first half of the taxes was paid by Mrs. Romig for the Loan Association, the second half for the Loan Association. Application for tax exemption of Minnie I. Curtis, a widow, for property in Moscow described as "85–125—Frye's 2nd Addition" was approved by the Board of County Commissioners July 2, 1929. Mrs. Curtis' testimony discloses that she "paid a little personal property taxes, three or four dollars a year," but doesn't think she paid any real estate taxes.

February 28, 1935, plaintiff (respondent here) began an action for foreclosure of mortgage against appellants. Judgment of foreclosure in the sum of $1929.96, together with costs, was recovered against appellants; and a deficiency judgment decreed against them for any amount still due and owing after foreclosure sale. The court also found and adjudged that the mortgaged property was of the reasonable value of $1,000. August 5, 1935, at sheriff's sale, plaintiff purchased the mortgaged property for $1,000 and a deficiency judgment was found to be $1,059.76. This action was instituted to set aside the deeds of conveyance of the Moscow property on the grounds that they were given to defraud respondent as a creditor. The cause was tried before the court January 27, 1937, and judgment entered March 8th, decreeing that the deeds heretofore described be set aside and held to be null and void and of no effect, and awarding costs to respondent. This appeal is from the judgment.

■ Appellant assigns as error the action of the court in overruling their demurrer to the complaint and also in denying their motion to require plaintiff to elect between what they term three separate causes of action. We do not deem it necessary here to analyze the complaint more than to say that it does not appear that it states but one cause of action. It is true that two deeds are involved. According to the allegations of the complaint, they were intended to accomplish one purpose and design only, namely, to defraud

the plaintiff as a creditor. The demurrer was properly overruled and the motion to require plaintiff to elect was also properly denied.

The decisive question on which this case turns is: Were the deed from Minnie I. Curtis to her son, George V. Curtis, and daughter, Grace B. Romig, executed March 7, 1927, and the deed from Myron L. Romig and Grace B. Romig to Ronald Romig executed June 17, 1935, fraudulent and intended and designed to hinder and delay the plaintiff herein as a creditor from the collection of the debt owing him? It will only be necessary for us to consider two findings of the court. In paragraph VIII of the findings of fact, the court says: "That said deed of gift," referring to the deed by Minnie I. Curtis to her son and daughter, "was not delivered until on or about the 17th day of June, 1935"; and paragraph No. XI is as follows:

"That said deeds above mentioned were made, executed, and recorded in pursuance of a general design on the part of defendants Minnie I. Curtis, Myron L. Romig, Grace B. Romig, George V. Curtis and Ronald Romig, to hinder and delay plaintiff in the collection of his note and judgment."

Now, addressing ourselves to the finding that there was no delivery of the deed from Minnie I. Curtis to her son and daughter until June 17, 1935, we are compelled to the conclusion that there is no evidence to support the finding. On the contrary, the evidence is undisputed that Mrs. Curtis executed this deed March 7, 1927, and gave the same to her daughter; that the daughter took the deed and put it in the safety deposit box at the bank used by herself and husband and kept it there until it was recorded. It appears that this deed was executed immediately following the recovery of Mrs. Curtis from a severe illness and that she wanted her daughter and son to have the property. She was living with and being cared for by the daughter. Where the grantee has in his possession and produced a deed of conveyance duly executed, the *prima facie* presumption arises that it has been duly delivered and the burden of proof rests on the party who asserts its nondelivery. (*Kester v. Adams*, 85 Fed. (2d) 646, 648; *Flynn v. Flynn*, 17 Ida. 147, 104 Pac. 1030; 8 R. C. L., sec. 62, p. 998.)

When we come to consider paragraph XI of the findings above quoted, we find no evidence whatever, and no circumstance even, tending to indicate that either George V. Curtis or Ronald Romig knew anything about this note and mortgage or the indebtedness due thereon; or that there had been any foreclosure or any probability of a deficiency judgment against Minnie I. Curtis or Myron L. Romig. In so far as the record shows, there was no indication of any conspiracy or general design on their part to defraud respondent or any creditor. There is a circumstance which tends to raise a presumption that Minnie I. Curtis and her daughter Grace B. Romig might be holding up recording this deed in order to enable the daughter and son to avoid taxes, through Mrs. Curtis claiming a widow's exemption from taxation on this property. If that was the intention, it was a fraud on the county and state and not a fraud on respondent, the creditor, and he did not in any way suffer from it.

This brings us to a consideration of the status of the parties at the time the original deed was executed by Mrs. Curtis to her son and daughter March 7, 1927. At that time the note held by respondent and secured by mortgage on 654 acres of patented grazing lands in Idaho county had been running for five years and the interest appears to have been paid regularly. There was only due the principal of $1200. There is no evidence whatever in the record to show that the land covered by the mortgage was not worth more than the amount due on the note *March 7, 1927, when Mrs. Curtis executed this deed*; and it would require a stretch of imagination, beyond the limits of judicial credulity, to believe that 654 acres of patented grazing land in Idaho county was not worth more than $1200 in March, 1927.

Now, it is true that the trial court, on the foreclosure of the mortgage in June, 1935, found that the reasonable value of this real estate covered by the mortgage was only $1,000. That judgment has become final and of course is *res adjudicata* as to the value of the property on the latter date; and except for the finding and judgment of the court to that effect, we would doubt if it was of so slight a value then. However, accepting the finding as we do as *res adjudicata,* as to the value of the property *at the*

*time of the foreclosure,* that finding and judgment does not by any means establish or determine the value of the property more than *eight years previous* to that time.

It is general public knowledge that real property of the character of that covered by this mortgage had not reached the depths of depression in value in 1927 that it later reached by 1935. (See report of Proceedings of State Board of Equalization 1927, pp. 64, 65, and Id., 1935, pp. 30, 31: Equalized value of grazing land for 1927, $5.49 per acre; equalized value of grazing land for 1935, $3.44 per acre.)

It should be remembered that neither George V. Curtis nor his sister Grace Romig was personally liable for the payment of the note secured by the mortgage. Myron Romig and Mrs. Curtis are the only parties to the transaction who were liable to a personal judgment for any deficiency that might arise from foreclosure of the mortgage. The debt to respondent being a secured debt, it was necessary for respondent to make at least a *prima facie* case, to the effect that the security covered by the mortgage was not sufficient to cover the debt when the conveyance was made; and that the conveyance of the property involved in this action rendered appellants, Myron L. Romig and Minnie I. Curtis, insolvent by reason of their not having other property adequate to respond to any deficiency judgment which might be entered.

In considering the validity of a conveyance alleged to be in fraud of a secured creditor, in the case of *McMillan v. McMillan,* 42 Ida. 270, at 274, 245 Pac. 98, this court said:

"Whatever the general rule may be with respect to the burden of proof in actions to set aside conveyances alleged to be in fraud of creditors, it must be kept in mind that this action is by a secured creditor, one who held mortgage security for the payment of his debt. The transfer in no manner endangered the mortgage security. The creditor neither alleged nor proved that the mortgaged property was not of sufficient value to pay the debt when the instalment payments for the purchase of the land were made and the gift was made to respondent. In such a case, to make it necessary for the grantee to prove that the donor was solvent when the transfer was made, we are of the opinion that it is

not sufficient for a secured creditor to merely prove the transfer, the debt, and the subsequent foreclosure and deficiency judgment.''

See, also, *Craig v. Partridge,* 48 Ida. 471, 477, 282 Pac. 940; *Kester v. Adams,* 85 Fed. (2d) 646; *Kester v. Helmer,* 16 Fed. Supp. 260, 263; *Hendrickson v. Helmer,* 7 Fed. Supp. 627.

There is another matter appearing in this case which must receive consideration: The defendant and appellant, Ronald Romig, who is the son of Myron and Grace Romig and the grandson of Mrs. Curtis, is a *bona fide* purchaser for value of his mother's interest in this property; and it affirmatively appears that he knew nothing of the foreclosure proceeding; and there is no evidence to the effect that he knew anything about the indebtedness. It is undisputed that he assumed a mortgage of $2,500 on the property; that he paid $750 cash at the time of the deal and made subsequent instalment payments aggregating $2,431.78, for which canceled checks were produced in evidence; and a further indebtedness for labor amounting to approximately $500 was discharged. It therefore appears that while the original conveyance from Mrs. Curtis to her son and daughter was without consideration, except that of love and affection, the conveyance from the son and daughter to appellant Ronald Romig was for full consideration and without notice to the grantee of either any fraudulent intent or insolvency. (*Farmers State Bank of Smithfield v. Renken,* 129 Neb. 416, 261 S. W. 851.)

''It seems to be settled beyond controversy that knowledge of or participation therein by the grantee of fraud of the grantor is essential to set aside or vacate a deed.'' (*Calvert v. Alvey,* 152 N. C. 610, 68 S. E. 153, 136 Am. St. 847; *Kerns v. Washington Water Power Co.,* 24 Ida. 525, 538, 135 Pac. 70.)

A grantee for valuable consideration and without notice of any fraud or fraudulent intent on the part of the grantor cannot be deprived of the benefit of his purchase, at the suit of the vendor's creditors, on charge of vendor's fraudulent intentions in making the conveyance. (See cases last above cited; also, 12 R. C. L., p. 644, sec. 151; Id., p. 491, and

cases cited in note 1; *Albertoli v. Branham*, 80 Cal. 631, 22 Pac. 404, 13 Am. St. 200.)

The judgment in this case will be reversed and it is so ordered, and the cause is remanded to the trial court with direction to grant the respondent a new trial if he desires to try the case again. Costs awarded to appellants.

Holden, C. J., and Morgan, Budge and Givens, JJ., concur.