**211 P.2d 764**

**DAHLBERG et al. v. JOHNSON'S ESTATE et al.**

**No. 7577.**

Supreme Court of Idaho.

Nov. 8, 1949.

Rehearing Denied Dec. 7, 1949.

Estes & Felton, Moscow, for appellants.

Kristiane Johnson, deceased. Respondents are wife and husband. Respondent, Regina Dahlberg, is the daughter of one R. J. Johnson, deceased, and the step-daughter of Kristiane Johnson, deceased, second wife of R. J. Johnson. Said respondent was the administratrix of the estate of R. J. Johnson. When such estate was being closed, a warranty deed was given by such respondent and the four other children of R. J. Johnson to Kristiane Johnson for the 160 acres of land described in the quitclaim deed in question and known as the "Home Place." Thereafter, Kristiane Johnson re-deeded such land to such respondent and four other children reserving in Kristiane Johnson a life estate in such property. By this transaction, such respondent acquired an undivided one-fifth interest to the land in question subject to the life estate therein.

The estate of R. J. Johnson was closed in November, 1942. Respondents thereafter resided on land belonging to Kristiane Johnson as renters. In the early part of 1944, they moved to Spokane, Washington. On March 8, 1944, one J. M. O'Donnell, Prosecuting Attorney of Latah County, arranged a meeting by telegram with respondents at the Davenport Hotel in Spokane. Mr. O'Donnell, as a witness for appellants, testified as to what took place at such meeting. Among other things, he testified as follows:

J. H. Felton, Lewiston, William J. Jones, Lewiston, for respondents.

PORTER, Justice.

This is an action by respondents to set aside and have declared void a quitclaim deed executed by respondents in favor of

"A. I told them that Mrs. Dahlberg's stepmother, Kristiane Johnson, had been in my office. I can't remember now whether

it was the day before or two days before, and had represented to me that she had theretofore authorized Regina Dahlberg to do her business for her; that Regina and Roy Dahlberg were living in Latah County, Idaho, but that she had recently discovered that they had moved out of Latah County, Idaho, in the nighttime and without notice to her; that they had taken with her—that they had taken with them a lot of her personal property, and I listed those at the time of the conversation. She said they had taken two one-hundred dollar government bonds, deeds and 'valuable papers. She had discovered that they had cashed ' and obtained an allotment check from the AAA which was due her which they had taken. That they had taken her 1944, V-8 Pickup Truck to Spokane with them. That they had sold her 1942 bean crop off the place and delivered them to the Troy and Kendrick warehouses, and the crops had been sold and the Dahlbergs had taken the money.

\*     \*     \*     \*     \*     \*

"I told them that if these facts were true, I believed they could be proceeded against both criminally and civilly. However, I emphasized and told them at that time that their stepmother was heartbroken, that she had wept in my office, and I had told her if we proceeded with this matter it might result in criminal prosecution. She wept and told me whether she got this property back, or not, she did not want Regina prosecuted; she couldn't stand to see her deceased husband's daughter in jail. At that point in my conversation, when I told that to Regina Dahlberg, she broke down and began to weep, and it was at that time she admitted taking these things. Up to that time she had remained quiet, stolid.

"I told her Mrs. Johnson was interested only in one thing, getting her property back. I asked her if she could make restitution and she said, Yes, everything was there, except the money; that was gone. And I said, 'Did you spend it?' and she said, 'Yes, we needed it to live on.'

\*     \*     \*     \*     \*     \*

"At that point in my conversation, I asked them if they could make restitution and it was then, Your Honor, that she told me about this real property \* \* \*. It was Mrs. Dahlberg who told me she had an interest in real property, and told me how I could ascertain what that was. It was her suggestion that that was the only thing we could restore to this woman of the things that had been taken from her and dissipated. I knew nothing about their property and could make no suggestions.

\*     \*     \*     \*     \*     \*

"Q. Will you repeat any conversation had between you with reference to the preparation of Plaintiffs' Exhibit No. 1 in evidence? A. Mrs. Dahlberg told me she had an interest in this land. I didn't know at that time what interest it was. I assumed it was an undivided interest. I believe she told me it was some asset that had come to her through her father's es-

tate, and I suggested the execution of that deed and I recalled going down to the public stenographer in the Davenport Hotel because that is the only time I have ever had occasion to use it, and I went down there and she drafted the deed and it was signed that same day, the first afternoon I was there.

"Q. Was there any restriction placed on the use of this deed, Mr. O'Donnell? A. There was not. The deed was given to me in restitution of the money that was supposed to have been spent. Everything else, so far as I know, was returned in kind by Mrs. Dahlberg." (ff. 73-83.)

With reference to what took place at such meeting in Spokane, respondents allege in their complaint as follows:

"VII.

"That at such meeting the said Prosecuting Attorney told the plaintiffs that he had been informed that Regina Dahlberg had in her possession some of the personal property belonging to the estate of R. J. Johnson; he further told them that if such personal property was not immediately turned over to him, together with a quit claim deed signed by them conveying all of their interest in the "Home Place" to Kristiane Johnson, he would immediately institute criminal proceedings against Regina Dahlberg, but that if such deed was signed it would be held as security and not recorded;

"VIII.

"That, at the time of such meeting, the plaintiffs, being frightened by, believing, and acting under the representations made to them by the said Prosecuting Attorney, and without having an opportunity to confer with counsel, signed said instrument, a copy of the record of which is attached hereto, marked 'Exhibit A,' and made a part hereof by reference;"

Respondents also allege in their complaint "that they received no consideration for said deed, and signed it solely upon the representations of said Prosecuting Attorney."

The quitclaim deed was taken by O'Donnell to Moscow, Idaho. The deed bears an acknowledgment, undated, purported to have been made in Latah County, Idaho, although it is admitted by O'Donnell that respondents never appeared before him in Idaho to acknowledge the same. O'Donnell turned the deed over to Kristiane Johnson.

Kristiane Johnson died on June 6, 1948. On June 23, 1948, the quitclaim deed was filed for record. On March 22, 1949, respondents commenced this action to have such quitclaim deed set aside and declared void. A trial of the cause resulted in judgment for respondents declaring the deed void and quieting title in respondents to an undivided one-fifth interest in the land in question. From such judgment, appellants appeal to this court.

By assignment of error No. I, appellants complain that the court erred in permitting plaintiffs to testify over objection to facts occurring prior to the death of Kristiane Johnson, contrary to the provisions of Section 9-202, I. C. The record discloses that the respondents, over timely objections, were permitted by the court to testify in chief and on rebuttal as to material facts occurring prior to the death of Kristiane Johnson. The court, in effect, reserved its ruling on the admissibility of such testimony. In deciding the cause, the court made the following finding of fact:

"X.

"That objection was made by the defendants to the admission of the testimony of plaintiffs in reference to the matters of fact occurring prior to the death of Kristiane Johnson; that the court at that time overruled the objections and heard such testimony, but now the court finds that in the determination of this matter there is sufficient evidence, exclusive of the questioned evidence, to justify the court in the above findings, and that the questioned testimony is corroborated by other evidence sufficient when taken by itself to base the findings upon."

By such finding of fact, the trial court in effect sustained the objections to such testimony. White v. Smith, 43 Idaho 354, 253 P. 849. The record now stands the same as if a motion to strike such testimony had been granted. Therefore,

whether or not the trial court erred in admitting the questioned testimony or any part thereof, need not be considered or determined. Furthermore, the admission of evidence incompetent under Section 9-202, I.C., has been held not reversible error when there is sufficient evidence, exclusive of the incompetent evidence, to establish the facts involved. Hartley v. Bohrer, 52 Idaho 72, 11 P.2d 616; Burns v. Skogstad, 69 Idaho 227, 206 P.2d 765. However, the admission of clearly incompetent evidence covering the gist of the action under reserved ruling, is a practice not to be commended.

By assignment of error No. II, appellants contend that the evidence is insufficient to sustain the judgment in three particulars. By subparagraph 1, appellants allege that there is no evidence whatsoever proving or tending to prove that the description of the real estate conveyed was not set forth in the deed at the time it was executed. In addition to his testimony heretofore quoted, O'Donnell testified concerning the preparation of the deed as follows:

"Q. Now, will you look at the photograph of that deed and, after having looked at it, where was the deed prepared? A. It was prepared at the Davenport Hotel in Spokane.

"Q. By whom? A. A public stenographer there in the lobby.

"Q. When, if you know, was a description put in the deed? A. I don't—my

recollection of it, Mr. Felton, is that it was made all at that time. However, upon examining the deed just prior to being called on the stand, I am not sure whether it was made in Spokane or later in Moscow. It appears to be two different typewriters used. However, as I say, my recollection of it, it had been prepared by the public stenographer in Spokane at the Hotel Davenport.

"Q. Did she use two typewriters, if you know? A. I don't recall.

"Q. You don't know when the description was put in the deed? That is your testimony, you do not know? A. My testimony would be, it was all done in the Hotel Davenport, done on March 8, 1944." (ff. 27-29.)

██ It is apparent from an examination of plaintiffs' Exhibit No. 1, being a photograph of the deed in question, that the description therein was written on a different typewriter from the one used to prepare the remainder of the instrument. The deed bears date of March 8, 1944, and was signed on that date. Plaintiffs' Exhibit No. 3 is a receipt dated March 9, 1944, given by O'Donnell to respondents acknowledging receipt, among other things, of certain abstracts. There is nothing in the record to indicate that O'Donnell, at Spokane, could have obtained the description inserted in the deed from any source other than from the abstract of title. The trial court made finding of fact No. VII as follows: "That at such meeting the Prose-

cuting Attorney induced the *the* plaintiffs to sign a blank quit claim deed to Kristiane Johnson; that such deed did not contain the description of any property and was not acknowledged; that thereafter, at some time not shown, a description was inserted in such deed and a purported acknowledgment was appended thereto;"

This finding of fact is sustained by substantial, although conflicting, evidence and will not be disturbed by this court. Checketts v. Thompson, 65 Idaho 715, 152 P.2d 585.

By subparagraph 2 of assignment of error No. II, appellants complain that "there is no competent evidence proving or tending to prove fraud or coercion in obtaining plaintiff's signature to the deed." The trial court made no finding on fraud or coercion and did not base its judgment on such issue. The judgment of the court is predicated upon finding of fact No. VII that the deed was signed in blank and "was void from the beginning."

██ Subparagraph 3 of assignment of error No. II is that "there is no testimony on the part of the plaintiffs, or any other person, that the property described in the deed is not the property which the plaintiffs intended to convey when they executed the deed in question." The mere fact that the description inserted in a blank deed after delivery is the description of the property which the grantors had in mind at the time the deed was signed, is not sufficient to validate a deed in fact signed in blank.

"Where a deed contains a blank as to, or in, the description of the property, and such blank is not filled in before delivery, the deed is void." 26 C.J.S., Deeds, § 30, p. 222.

"A deed is inoperative to convey any property where it is delivered in blank as to the land intended to be conveyed and no authority is given to the grantee to fill in descriptive data. Moreover, it has been said that such authority cannot be given by parol and that a deed with a description filled in in pursuance of oral authority is void by reason of the statute of frauds." 16 Am.Jur. 584-5.

In the case of Jones v. Coulter, 75 Cal. App. 540, 243 P. 487, the grantor signed two blank deeds and orally authorized the filling in of the name of the grantee and the descriptions of the properties. In holding such deeds void, 243 P. on page 490, the court said: "Though the decisions of other jurisdictions are not in entire harmony upon the question, it has been definitely decided in this state that under our statute of frauds the name of the grantor or grantee or a description of the property cannot be inserted by an agent for the grantor, in the absence of the latter, unless the agent's authority be in writing. If the authority of the agent be not in writing, his insertion of the name of grantor or grantee or description of the property does not pass the title. Upton v. Archer, 41 Cal. 85, 10 Am.Rep. 266; Vaca Valley & C. R. R. v. Mansfield, supra (84 Cal.

[560], 566, 24 P. [145], 147); Harris v. Barlow, 180 Cal. 142, 179 P. 682. See, also, Lund v. Thackery, 18 S.D. 113, 99 N.W. 856."

See also, Barth v. Barth, 19 Wash.2d 543, 143 P.2d 542; Utah State Building & Loan Ass'n v. Perkins, 53 Utah, 474, 173 P. 950; Glasscock v. Farmers Royalty Holding Co., 5 Cir., 152 F.2d 537.

We have considered assignments of error No. III, contending the court erred in overruling the motion to elect, and No. IV, urging error in the overruling of objection to certain questions. We find no merit in these assignments.

By assignment of error No. V, appellants complain that "the court erred in failing to find the plaintiffs guilty of laches for failure to bring this action during the period of the life of Kristiane Johnson; and this action barred by Section 5-218 Idaho Code." Section 5-218, I.C., has no bearing on the issues in this case. It does refer to an action for relief on the ground of fraud or mistake, but fraud or mistake are not issues under the pleadings in this case.

The trial court made no finding of fact on the issue of laches. No such finding was requested by appellants. The findings made are inconsistent with the allegations and theory of appellants' case, and the presumption will be indulged that if findings had been made thereon, they would have been adverse to appellants. The trial court's failure to find on the issue

of laches did not constitute reversible error. Koser v. Bohemian Breweries, Inc., 69 Idaho 33, 202 P.2d 398.

No reversible error appearing in the record, the judgment of the trial court is affirmed. Costs awarded to respondents.

HOLDEN, C. J., and GIVENS, TAYLOR and KEETON, JJ., concur.