231 P.2d 741

HOLLAND v. BEAMES et ux.

No. 7605.

Supreme Court of Idaho.

May 15, 1951.

Harry Povey and Rayborn & Rayborn, all of Twin Falls, for appellant.

S. T. Lowe, Burley, for respondents.

TAYLOR, Justice.

The deceased, John G. Payne, 84, a widower, was the owner of a forty acre farm in Jerome County. On the 16th of October, 1947, the defendant, Kue H. Beames, 33, a school teacher, hearing that Payne wanted to sell his farm, went to his residence in Eden and talked to him about buying the farm. Defendant says Payne informed him he wanted cash and he informed Payne that he was unable to pay cash, but was selling reclaimed lumber from a building he had purchased from the Government, and that he would pay for the farm as soon as he was able to sell enough of the lumber to raise the money. Payne then agreed and they went to Twin Falls. There, at the office of an agent of the Federal Land Bank, the defendant paid the balance due on a mortgage held by that bank on the Payne farm in the sum of $284.88. The agent advised that the abstract of title and certificate representing irrigation water right were in Spokane and that he would send for them. Payne and Beames then went to a real estate and abstract office in Jerome, where one, Joe Shirley, prepared a deed to convey the property from Payne to the defendants, and also a contract of sale from Payne to the defendants. The contract recites a purchase price of $3500, payable $100 in cash and the balance of $3400, with interest at 6% per annum, payable in monthly installments of $150.70 each. The contract was signed by Payne and Beames and the deed was signed by Payne and acknowledged before Shirley. One copy of the contract was given to each of the parties and the deed was given to the grantor, Payne.

Sometime during the night of November 10–11, 1947, Payne was found in a borrow-pit at the edge of the village of Eden, apparently the victim of a hit-run driver. He was taken to a hospital at Twin Falls, where he died on the 11th. Checks and

cash totalling $843.70 were found in his wallet. The checks were three in number and totaled approximately $593 and one of them was a check drawn by Beames payable to the deceased in the sum of $150.-70, dated November 4, 1947. On November 12th plaintiff Frank Holland and his wife went to the home of the deceased where they found the contract among other papers in a pasteboard box on the kitchen table. They entered through the back door, which was unlocked. A few days later Holland and Harry Povey, attorney for the estate, made a search of deceased's house. Neither the deed nor any money was found there. On December 6, 1947, the attorney wrote the defendant advising him of Holland's appointment as executor and that the next installment on the contract due December 10th should be paid to him. The defendant did not respond to this letter. On December 11th the attorney and executor called on the defendant and were then advised by him that he had paid the balance of the purchase price in full with interest to the deceased at his home in Eden on November 6th, and that deceased had delivered the deed to him. The deed was recorded by Beames on December 9, 1947. After making demand for payment and serving notice of forfeiture, the executor commenced this action, for the cancellation of the contract and to quiet the title in the estate, on May 14, 1948.

Defendant's story briefly is as follows:

He had accumulated $3400 from previous years' earnings and early in September had purchased from the Government the auditorium building at the Hunt Japanese relocation center for the sum of $5000, plus $400, which he was required to deposit as a forfeit in the event of his failure to clean up the grounds after the building was removed. To make this deal he had borrowed $2500 from the Hazelton State Bank. He hired men and commenced levelling the building and selling the lumber reclaimed from it. Checks he received from larger sales he deposited in the bank, smaller checks he cashed at retail stores and took the money home in currency where he accumulated it in a dresser drawer. He said he was accumulating this money to pay the note at the bank, and that up to November 6th he had collected approximately $4800 from the sale of lumber; that he met Mr. Payne on November 5th and gave him his check for $150.70 which he had drawn November 4th; that he then advised Payne that he had collected enough money to pay the bank and that Payne thereupon demanded that he pay him the full purchase price for the farm; that he made up his mind to do so and to ask the bank for an extension of time if necessary; that he took the money from the dresser drawer on the morning of November 6th amounting to some $3250 in currency and that he carried it in two bundles in his outside overcoat pockets to the school at Hazelton where he taught during the forenoon and to the school at Eden where he taught during the afternoon, his coat hanging near his desk in

each place; that after school had recessed in the afternoon he immediately went to Mr. Payne's home in Eden and there figured the interest, counted out the balance due—$3,249.30 principal, $12.27 interest—and gave it to Mr. Payne at his kitchen table and received the deed from him; that the currency that he carried consisted of approximately $2000 in twenty dollar bills, $1000 in ten dollar bills, and the rest in fives. He also claimed as additions to his income during the period involved, $600 for his teaching services, $150 from a government bond, $80 for a calf sold, and $1700 borrowed from a bank in Burley, which he used to make up the amount required to pay the note at the Hazelton bank, which he paid on December 22nd. His bank statement for the period shows checks drawn by him totalling approximately $2000.

On plaintiff's behalf, Shirley, who drew the contract, and the stenographer in his office testified that Mr. Payne made the statement, during the discussion preliminary to the contract, that he did not want a larger initial payment nor cash for the property because he wanted a monthly income to live on. Holland testified that on Friday evening, November 7th, he met Payne in Eden, at which time Payne asked him what he was doing, and advised him that he wanted him to drive Mr. Payne up to Beames place for the purpose of introducing Holland to Beames and authorizing him to collect the monthly payment from Beames while Payne was away on a contemplated visit to his old home in Kentucky. One Colbert, also a former Kentuckian, testified that he met Payne in Eden on the evening of November 10th and they talked over their prospective trip to Kentucky; that Payne told him he wanted to introduce Holland to Beames so that Holland could collect the payments from Beames during the winter while Payne was away.

The trial court found that the payment had been made and deed delivered as testified by the defendant. There is direct conflict in the evidence as to what the deceased said at the abstractor's office when the contract was being discussed, and conflicting inferences are to be drawn from the testimony of Holland and Colbert, and from what the deceased told them on the 7th and 10th of November, and there is hesitancy, uncertainty, evasiveness, and some conflict in the testimony of defendant Beames. However, such questions as are thus presented by the evidence are primarily for the trial court. It has long been the rule in this jurisdiction that the findings of the trier of the facts will not be disturbed where they are supported by substantial, although conflicting, evidence. Sec. 13-219, I.C.; Jones v. Adams, 67 Idaho, 402, 182 P.2d 963; Crenshaw v. Crenshaw, 68 Idaho 470, 199 P.2d 264; Dahlberg v. Johnson's Estate, 70 Idaho 51, 211 P.2d 764, 11 A.L.R.2d 1365; Nelson v. Hoff, 70

Idaho 354, 218 P.2d 345; Hancock v. Halliday, 70 Idaho 446, 220 P.2d 384; Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080; Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347.

After the death of the maker the deed is found in the possession of the grantee. In the absence of evidence to the contrary this raises a presumption of delivery. Brummund v. Romig, 59 Idaho 312, 81 P.2d 1085; Butler v. Woodburn, 19 Cal.2d 420, 122 P.2d 17; Rich v. Ervin, 86 Cal.App.2d 386, 194 P.2d 809; 26 C.J.S., Deeds, § 184; 16 Am.Jur., Deeds, sec. 382.

Appellant contends that the defendant's story of the payment and delivery of the deed "is so weird, fantastic, contradictory and too unsubstantial to be worthy of credence, in the face of definite and established facts to the contrary." This too was a question for the trial court, and was resolved against the appellant. Fundamentally the weakness in this contention is that the record does not disclose any definite and established facts contrary to defendant's claim. Although we may have some misgivings as to what actually happened, we cannot on that ground vacate the findings.

Judgment affirmed. Costs to respondents.

GIVENS, C. J., and PORTER, THOMAS, and KEETON, JJ., concur.