CARRIE J. STOVER v. MARTIN R. SNOW and DAISY D. SNOW, Appellants.

Division One, October 11, 1926.

1. **CONVEYANCE: Fraudulent Representations: Acquiescence: Ratification.** Failure to offer to rescind a conveyance alleged to have been obtained by fraud practiced upon and false representations made to the grantor, after he had full knowledge of all the facts with respect to which he claims the false representations were made, and actively assisting the grantee in trying to find a buyer for the land conveyed, amount to full ratification of the contract pursuant to which he conveyed, or attempted to convey, and fully disposes of pleaded fraud as a defense to the grantee's suit to determine the title.

2. ———: **Erasure of Grantee's Name: Agent of Grantor: Homestead.** A conveyance of a homestead having been signed and acknowledged by a husband and wife in prospective exchange for another homestead, and the exchange having failed, the representative of a land company who assisted the husband in erasing the name of the grantee was the agent of the husband, and by delivering it, then blank as to grantee, to the company, the husband impliedly authorized the company to insert its own name or that of any other person as grantee, and cannot assert that the deed did not operate as a conveyance, whether the land was a homestead or not.

3. ———: **To Unnamed Grantee: Husband as Agent of Wife: Fraud: Innocent Purchaser.** Where the husband and wife, in pursuit of a prospective exchange of their homestead for another, signed and acknowledged a deed which did not name the grantee, the reason being that neither knew whether a husband or his wife was the owner of the other homestead, and her intention being that her husband should insert in the blank space the name of the owner, she thereby made her husband her agent for the purpose of completing the deed and delivering it; but the act of the husband, when such exchange of homesteads had failed, in erasing the name of the grantee which he had inserted, and in delivering the altered deed to a land company, in exchange for Texas lands, was beyond the scope of his agency; but nevertheless the deed is valid and binding as to subsequent innocent purchasers for value from the company, although the company received the deed with full notice that it was delivered to it without knowledge or consent of the wife. And the evidence in this case shows that the grantee of the company was an innocent purchaser for value.

Corpus Juris-Cyc. References: **Corporations,** 14a C. J., Section 2409, p. 519, n. 99 New. **Deeds,** 18 C. J., Section 57, p. 177, n. 56. **Estoppel,** 21 C. J., Section 26, p. 1067, n. 93. **Exchange of Property,** 23 C. J., Section 55, p. 217, n. 7. **Vendor and Purchaser,** 39 Cyc., p. 1775, n. 55; p. 1784, n. 9.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall*, Judge.

AFFIRMED.

*M. D. Aber* for appellants.

(1) The prayers of the separate answers of the defendants seek affirmative equitable relief and further ask decree establishing defendants' titles in the land described. The equity jurisdiction of the court is thereby brought into existence and the cause is therefore triable in this court upon the facts *de novo*. Hutchinson v. Patterson, 226 Mo. 174; Lewis v. Barnes, 272 Mo. 402; Armour v. Lewis, 252 Mo. 569. (2) Delivery of a deed is essential to its validity. Rausch v. Michel, 192 Mo. 293. (3) The relation of husband and wife does not alone imply an agency of one for the other. Delivery by the husband without the actual or implied consent of the wife is not binding upon her. Dallas v. McNutt, 249 S. W. 35. (4) Daisy D. Snow's dower interest in the land could only be released by her jointure in a deed thereto and her acknowledgment thereof. She did not do this as to any deed, except one to Angell which was never delivered. A different instrument was created by the erasure of Dr. Angell's name. This she neither signed nor acknowledged. Sec. 2175, R. S. 1919. (5) The spoliation of the deed by M. R. Snow and Bradeau, rendered it utterly void. Kelly v. Thuey, 143 Mo. 422. (6) While a deed may be executed with name of grantee left blank, it is essential to filling of such blank that authority therefor be given by grantors when made. In this case there is no proof of any authority. Hord v. Taubman, 79 Mo. 101; Thummel v. Holden, 149 Mo. 677; Derry v. Fielder, 216 Mo. 176; Cheney v. Eggert, 197 Mo. App. 651. (7) The farm was the homestead, and its title could be transferred only by the joint act of the record owner and his wife joining therein. Sec. 5853, R. S. 1919; Growney v. O'Donnell, 272 Mo. 167. (a) The fact that the defendants were living in Holden and not physically upon the farm is not prima-facie abandonment. Keeline v. Sealy, 257 Mo. 519; Pocoke v. Peterson, 256 Mo. 516. (b) "The correct judicial attitude toward homestead laws is one of as great liberality in construction as their words and spirit permit." Balance v. Gordon, 247 Mo. 124; Dennis v. Gorman, 289 Mo. 1. (c) Property once a homestead remains always a homestead until the contrary appears, and the burden is on the litigant asserting a change of status. Seilert v. McAnally, 223 Mo. 516. (d) An absence such as that under which defendants were not physically upon the homestead at the times in question does not constitute abandonment. Duffey v. Wills, 99 Mo. 132; Spratt v. Early, 169 Mo. 357; Seilert v. McAnally, 223 Mo. 516; Pocoke v. Peterson, 256 Mo. 516. (8) "He who buys a piece of

property in the open and visible possession of a third person is chargeable with notice of the title and right of that person in the premises (Leavitt v. LaForce, 71 Mo. 353; Davis v. Briscoe, 81 Mo. 27; Ins. Co. v. Smith, 117 Mo. 261)." Wigginhorn v. Daniels, 149 Mo. 164; Squires v. Kimball, 208 Mo. 119; Swift v. Buford, 289 Mo. 432. (9) There is no evidence of any ratification of the wrongful act of Snow and Bradeau by Mrs. Snow. The evidence shows quite to the contrary. Seubert v. Gille, 230 Mo. 472. (10) And even had knowledge been shown, the act claimed to have been ratified was one which the statute renders void unless done in the prescribed way. And "a void act is incapable of ratification." McFarland v. Heim, 127 Mo. 327.

*Milford W. Rider* for respondent.

(1) The evidence on the question of homestead was not sufficient to establish that the land in question ever was the homestead of the defendants. R. S. 1919, sec. 5853; Klotz v. Thodes, 240 Mo. 499; Barton v. Walker, 165 Mo. 25; St. Louis Brewing Co. v. Howard, 150 Mo. 455; Kennedy's Admr. v. Duncan, 157 Mo. App. 221. (2) If it ever had been the homestead of the defendants, such homestead had been abandoned long prior to the delivery of the deed to the Stewart Farm Mortgage Company. Smith v. Bunn, 75 Mo. 559; Snodgrass v. Copple, 131 Mo. App. 351; Stewart v. Pritchard, 37 L. R. A. (N S.) 807. (3) If the land in question was not the homestead of defendants at the time of the trade with Stewart Land Company, the delivery of such deed as changed by the substitution of grantees was good as a conveyance by Martin R. Snow, even if his wife did not authorize such substitution, and if it was authorized or consented to by her, it was good as to both. It would be good as to both if consented to by her whether it was their homestead or not. Wetherington v. Williams, 134 N. C. 276; 2 C. J. 1239, 1240; Bovine v. Sheldon, 155 Mich. 556, 130 Am. St. 579. (4) The course of conduct of the defendants from the time of the negotiations between Snow and the Stewart Land Company for the Texas land, and the facts and circumstances surrounding such conduct, overcome Mrs. Snow's denial and justify the conclusion that in fact she knew all about the Texas trade, and acquiesced therein, and joined with her husband in the attempted acquisition of the tract in Texas.

RAGLAND, P. J.—The petition in this case is in two counts. The first states a cause of action under the statute for the determination of title to real estate. The second is in ejectment. The answer after setting forth certain matters as grounds therefor seeks affirmative

equitable relief.. The issues as made by the pleadings will be more definitely indicated after the facts have been outlined.

In 1912 the defendant, Martin R. Snow, acquired title in fee simple to the land described in the petition, namely: Lot two of the northeast quarter of Section 26, Township 46, Range 28, containing 91.83 acres, more or less, in Johnson County, Missouri. Snow and his wife, defendant Daisy D., lived on the land more or less continuously from the time of its acquisition until about the beginning of the year 1917. At that time he rented the farm, and with his family moved to Holden, where they continued to reside until April, 1919. While living at Holden he engaged in various business activities, principally that of retailing coal, and he sent his children to school there. Through some arrangement with his tenant he kept two or three head each of horses and cows and a few articles of household furniture on the farm. He did not purchase a house in Holden, but he did buy a coal yard.

In April, 1919, Snow entered into an agreement with one J. L. Angell for the exchange of the farm, subject to an incumbrance of $2,500 then against it, for a residence property in Holden. For the purpose of carrying out that agreement he went to a notary's office and had prepared a deed for the conveyance of the farm. Not knowing whether Angell wanted the land conveyed to himself, or to his wife, the deed was left blank as to the grantee, and in that condition it was signed and acknowledged by Snow at the time of its preparation, and subsequently by his wife Daisy D., the instrument in the meantime being left with the notary. A few days after the deed was signed and acknowledged by both Snow and his wife, Snow appeared at the notary's office and directed that the blank that had been left be filled by the insertion of the name, "J. L. Angell." Shortly afterward by mutual agreement the contract between Snow and Angell for the exchange of properties was canceled, and Snow took up the deed that had been left with the notary.

Soon after the trade with Angell had fallen through Snow traded his farm to the Stewart Farm Mortgage Company of Kansas City for a small tract of land in southern Texas. (There were two Stewart Companies operating together. One was the Stewart Farm Mortgage Company and the other was the Stewart Land Company. It is alleged in the answers of defendants that the one was the *alter ego* of the other. We will so treat them and hereinafter refer to them indiscriminately as the Company). For the purpose of conveying the farm he delivered to the Company the deed he had had prepared for Angell, but from which the name of the grantee had been erased. About the first of May, 1919, he went to Texas, took possession of the land for which he had traded and set about putting in a crop. He took with him two of his children (small boys); and about the first of July following, he was joined by his wife and the remaining child or children.

The farm was exchanged subject to a lease to his brother, John Snow, for a term expiring March 1, 1920, and by the terms of the exchange the defendant, Martin Snow, was to receive the rents accruing under that lease. He left a team of horses, two cows, two calves, and a bed on the farm in his brother's custody. When Mrs. Snow left for Texas she stored their household goods in Holden.

About the first of October, 1919, Snow's land in Texas having been overflowed and the crop thereon destroyed, he abandoned it and returned to Missouri. Mrs. Snow and their children had returned a month earlier. Upon his return he accepted employment from the Company, pursuant to which he solicited buyers not only for its Texas lands, but also for those which it had acquired in this State, including the land which he had traded it. He continued in that employment until May, 1920, when he went to work in the post-office at Kansas City. His family lived in the meantime first at Independence and then at Kansas City. About the first of December, 1920, he came to the conclusion that the deed he had given the Company had not passed the title and he thereupon took his family and moved to the farm, a brother who was occupying the land as the tenant of the plaintiff yielding him possession.

Shortly prior to March 1, 1920, the Company negotiated a sale of the land in controversy to one Ayler, and its representative and Ayler went to the office of O. G. Boisseau, a real estate agent at Holden, to have drawn a contract evidencing the terms of the sale. The Company's agent directed that the contract provide that Ayler would accept as a sufficient instrument of conveyance a deed signed and acknowledged by Martin R. and Daisy D. Snow, but blank as to grantee, which he then and there exhibited. Boisseau examined the deed and discovered, as he thought, that the name of a grantee had been written in the deed and subsequently erased; he thereupon advised Ayler that the contract should require a new deed from the Snows. The Company's agent declined to obligate his principal to furnish such a deed and the negotiations thereupon came to an end.

After the deal with Ayler had fallen through the Company caused its name to be inserted as grantee in the deed just referred to, recorded the deed and then set about to find a new purchaser. Thereafter and in the early part of March, 1920, a representative of the Company took plaintiff and her husband, L. Stover, to the farm with a view to selling it to them. A sale, or rather an exchange of lands, was immediately effected. The Company conveyed the land in controversy to the Stovers, husband and wife, subject to the incumbrance of $2,500; and the Stovers conveyed to the Company land which they valued at $4,000, and in addition to such conveyance paid the Company $1,000 in cash. Within a few days after they had bought the land the Stovers leased it to John Snow. Through an arrange-

ment with the latter, James Snow, another brother, went into the actual occupancy of the premises and so continued until the defendants took possession in the following December.

This suit was commenced April 12, 1921, in the Circuit Court of Johnson County, by L. Stover and Carrie Stover as plaintiffs against Martin R. Snow as defendant; it was removed to the Circuit Court of Jackson County on change of venue. Pending the action plaintiff, L. Stover, died; on the application of Daisy D. Snow she was made a party defendant.

The separate answer of the defendant, Martin R. Snow, alleges: That long prior to the first day of May, 1919, he and his wife, Daisy D. Snow, "owned and occupied the lands in controversy as a homestead, subject to the encumbrance of a deed of trust securing a debt of $2,500; that prior to that time defendant and his said wife had negotiated for the exchange of their said homestead for another homestead, and in anticipation of a consummation thereof, they had signed a general warranty deed to the grantee therein, for the purpose of delivering it, but that the negotiations failed and said deed was left undelivered;" that thereafter the Company by false and fraudulent representations induced him to exchange his said homestead for land in southern Texas; "that defendant relied wholly and completely upon the said false and fraudulent representations without knowledge of their falsity and fraudulent character, and informed the Company that if it desired to do so, he would take the deed above-mentioned and erase in it the name of the grantee therein when it was executed, and deliver it to them in exchange for a conveyance of the said lands (in Texas) so exhibited to him, but that he could not give a deed to said farm for the reason that his wife, Daisy D. Snow, would not sign the deed thereto, nor agree to a transfer of their said homestead for Texas land, all of which was contingent, upon defendant's part, upon the truth of the representations so made, that said Company thereupon took the said deed and it and the defendant erased the name of grantee, and it took the said spoliated instrument; . . . that if plaintiffs have any deed or paper writing of any kind purporting to convey any form of title to said described lands to them, they took and received it knowing that the legal title to said lands belonged to and was vested in defendant and his wife and that the same was their homestead and that they were in possession of it claiming title thereto." The answer concludes with a prayer that all instruments "purporting to convey any title by any named grantor in such instrument, or by any grantee thereafter, direct or *mesne*, to any other person or to plaintiffs, be canceled and for naught held, and that the title of defendant and his wife be established and declared."

The separate answer of the defendant Daisy D. Snow after adopt-ing the answer of her co-defendant further alleges: "that said deed so signed by her was thereafter without her knowledge or consent spoliated, the name of said grantee J. L. Angell erased therefrom, and the name of a different grantee wholly unknown to her inserted therein and the deed delivered to such grantee, all wholly without any knowledge of the proceedings had, on her part, or of any facts with reference thereto, and that if same was thereafter delivered to said grantee it was without this defendant's knowledge or consent, and was wholly ineffective to convey this defendant's said homestead or any interest therein, or the inchoate dower of this defendant or any interest therein."

The reply specifically denies the allegations of the separate answers of defendants relating to fraud—both that averred to have been practised upon Martin Snow by the Company and that practised upon Daisy Snow by her husband and the Company; denies that the land in controversy was the homestead of defendants at the time it was exchanged for Texas land; avers that defendant, Martin Snow, acted for his wife as well as himself in making delivery of the deed to the Company; pleads acquiescence and ratification on her part with respect to such delivery, and laches and estoppel on the part of both, and finally that plaintiffs were innocent purchasers for value.

The circuit court found the issues for plaintiff under both counts of the petition and gave judgment accordingly, on June 22, 1923. From such judgment defendants prosecute this appeal. Matters of evidence not embodied in the foregoing statement will be noted in the course of the opinion.

The evidence discloses that respondent has the record title, in fee simple, to the land in controversy. A link in her chain of title is the deed from Martin R. Snow and Daisy D. Snow to the Stewart Farm Mortgage Company. Appellants challenge it as an effective instrument of conveyance on two grounds: First, that it was obtained by means of false and fraudulent representations with respect to the Texas land made to Martin R. Snow; and, second, that the land which it purports to convey was a homestead and Daisy D. Snow, the wife, did not join her husband in its execution. Neither the allegations of the pleadings respecting the fraudulent representations made to Snow nor the evidence offered in support of them have been set out, because the alleged fraud as an issue in the case is fully disposed of by Snow's own testimony. After he had acquired full knowledge of all the facts with respect to which he claimed that the false representations had been made, he did not once offer to rescind, but on the contrary actively assisted the Company in trying to find a buyer for the Missouri farm, thereby fully ratifying the contract pursuant to which

he conveyed, or attempted to convey, the title to it. [Taylor v. Short, 107 Mo. 384.]

Martin Snow testified that he never at any time prior to their return from Texas told his wife that he had exchanged the Missouri farm for the Texas land; that in effecting the exchange he used the deed that had been prepared for Angell because his wife was unwilling to go to Texas and would not sign the deed conveying the farm if she knew he was trading it for land in Texas. She testified that the first knowledge she had of the sale of the farm to the Company and the delivery to it of the Angell deed was communicated to her by a real estate agent at Holden after her return from Texas in September, 1919. The evidence shows, however, that after learning all the facts about the erasure of Angell's name from the deed and the delivery of the deed by her husband to the Company, she did nothing whatever about it. When her husband returned a month later and accepted employment as general agent of the Company they moved to Independence, where they lived during the entire time of that employment. When he quit the Company's service and secured work in the post-office in Kansas City, in May, 1920, they moved to Kansas City. She remained with him there until December following when she accompanied him back to the farm. She never by any outward act of her own repudiated his act in delivering the Angell deed until she filed her answer in this case.

Martin Snow further testified that he told the representative of the Company with whom he was negotiating that his wife was unwilling for him to trade for the Texas land and for that reason he could not get her to sign a deed conveying the farm, but he could erase Angell's name from a deed which had already been signed and acknowledged by her and give the Company that if it would accept such a deed; that the representative said that that would be all right and thereupon assisted him in making the erasure; and that thereafter he (Snow) delivered the deed, blank as to grantee, to the Company. This testimony has no relevance other than it tends to show that the Company received the deed with full notice that it was delivered without the knowledge or consent of Snow's wife. If the Company's representative assisted Snow in making the erasure, he was, while so doing, the agent of Snow and not of the Company. The latter had nothing to do with the deed until it was delivered by Snow and it was then blank as to grantee. By delivering such a deed to the Company, Snow impliedly authorized it to insert as grantee its own name, or that of any person or corporation to whom it might sell the land. And so far as he is concerned it does not now lie in his mouth to assert that the deed, when a grantee's name was inserted, did not operate as a conveyance of the land, homestead or no homestead. [Thummel v. Holden, 149 Mo. 677; Board of Education v. Hughes, 118 Minn. 404.]

When Daisy D. Snow signed the deed in question no grantee was named therein. From all the circumstances attending the transaction it is entirely clear that she intended that her husband, Martin, should insert in the blank space that was left the name of either L. J. Angell or that of his wife, and that he should then deliver the deed to the grantee. In other words, she made her husband her agent for the purpose of completing the deed and making delivery of it. The delivery of the deed to the Company, however, was beyond the scope of his agency and was therefore wholly unauthorized. But notwithstanding that fact the deed is valid and binding as to innocent purchasers for value claiming under it. [State v. Matthews, 44 Kan. 596; Pence v. Arbuckle, 22 Minn. 417.]

Were the plaintiff and her husband innocent purchasers? They lived at Independence. He was a building contractor. For a month or so prior to the purchase of the land in controversy he had engaged to some extent in the real estate business, but he had at no time represented or had any connection with any of the Stewart Companies who operated from Independence and Kansas City. During the negotiations leading up to the sale of the land, the Snow deed was not shown the Stovers. There was nothing in the situation calling for an inspection of it. According to Mrs. Stover's testimony, neither she nor her husband had ever heard the Company's title questioned in any respect. As proof that they did have full notice of the invalidity of the deed just referred to appellants rely upon the testimony of James Snow, whom the Stovers found on the farm when they went to see it as prospective buyers in March, 1920. He testified:

"I am a brother of Martin R. Snow. Regarding the land in controversy, I had my mother write Martin R. a letter while he was in South Dakota. My other brother who was on the farm in 1919 was going to leave; she wrote him and asked if he would rent me the place and furnish a team for me to farm it with; he said he would, so I moved there about March 15, 1920. . . .

"On the day I moved on the farm, two real estate men and Mr. Stover and his wife came to the farm. At that time I was putting the last load of stuff into the house. I had put the rest in before they came. They asked me if the farm was rented and I told them yes; he wanted to know who I rented it from. They didn't ask who my brother was. . . .

"Q. Was anything more said about the title? A. I told them Mr. Boisseau had turned the deed down. I understood he had for Ayler Brothers. . . .

"BY THE COURT: What was the matter with the title? A. I don't know only what I heard. I heard that the deed that was given for the farm was made out to Dr. Angell and wasn't any good. That was what Ayler Brothers told my brother.

"BY THE COURT: Did you tell that to Mrs. Stover? A. Yes, sir.
"Q. And you told Mr. Stover the same thing? A. Yes, sir; I did."

Plaintiff's evidence tended to show that John Snow, to whom the farm was rented at the time the Company bought it and whose term had just expired, had applied for another year's lease and had been told by the Company that he could have it if the farm was not sold, and this was known to the Stovers at the time they were looking at the land with a view to buying it. Mrs. Stover testified: "We drove in there before they (James Snow and family) got there, and they came in with their little load of goods, one horse on a light wagon. I wondered if it was the man that was going to rent the place. We asked him right there if he was the man that was to rent the place and he said 'No,' it was his brother. He said he was going to live in the house and work for him; there was nothing at all said about the title to me; if there had been I would have said we wouldn't take it."

That John rented the farm from the Stovers after they bought it and that James, through some arrangement made with John, lived on the farm in 1920 is not denied. A consideration of James Snow's testimony in connection with certain facts which are unquestionably established by the evidence in the case shows that it is entitled to little, if any, credence. At the time that he says that he rented the land from Martin, the latter was in South Dakota working for the Company as a general agent and was making no claim of any kind to the land. Boisseau and Ayler both testified in the case. It does not appear that either of them knew anything about the history or antecedents of the deed. They discovered that the name of some grantee had been written in it and then erased, and that is all they knew about it. It is incredible, therefore, that James Snow within a few days after the occurrence in Boisseau's office, through Ayler Brothers, "heard that the deed that was given to the farm was made out to Dr. Angell and wasn't any good." The learned chancellor who heard the cause *nisi* evidently found that the plaintiff was an innocent purchaser for value and in that finding we concur.

In view of the conclusions reached, the judgment of the circuit court should be affirmed. It is so ordered.

All concur, except *Graves, J.*, absent.