Mr. and Mrs. Robert SCHOTT, d/b/a Build-
ers and Industrial Supply Company, a
Corporation, Plaintiffs-Respondents,

v.

Ken BRUCE, Defendant-Appellant.

No. 32280.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1966.

Thurman, Nixon, Smith & Howald, Louis Jerry Weber, Hillsboro, for defendant-appellant.

Steiner & Fenlon, Clayton, for plaintiffs-respondents.

BRADY, Commissioner.

This case comes to the writer upon reassignment. It began as a suit upon an account arising out of a transaction between these parties involving some garage doors, kitchen cabinets, and range hoods plaintiffs allege they sold and delivered to the defendant. A jury being waived, trial was had with a judgment for the plaintiffs. The defendant has perfected his timely appeal. The transaction out of which this controversy arose occurred prior to the effective date of the adoption of the Uniform Commercial Code in this State, (see RSMo 1959, 400.1–101 to 400.10–102, V.A.M.S.) and was tried without regard to the possible application of the provisions of that code.

We review non-jury cases as we do suits in equity, giving due regard to the trial court's opportunity to judge credibility of the witnesses and allowing the judgment to stand unless it is clearly erroneous, but we make independent findings of fact and reach our own conclusions upon the weight of the evidence. We are to enter or direct the entry of such judgment as justice requires. Jones v. Des Moines and Mississippi River Levee District No. 1, Mo.App., 369 S.W.2d 865.

The defendant, a builder, was constructing houses in a subdivision near High Ridge, Missouri. He purchased six garage doors, seven sets of cabinets, and some range hoods from the plaintiffs. With respect to the cabinets and range hoods, the contract consisted of a diagram of the kitchen to be constructed in the houses with notations of the dimensions of the range hoods and the dimensions and stock number references to the cabinets stated thereon. Also noted thereon were the words "total installed" which appeared directly opposite the total price quoted. The plaintiffs' evidence was that the cabinets and range hood for the house on Lot 16 were delivered to that house and placed therein. Their evidence also was that the cabinets were not installed at defendant's request as he wanted time to allow a wall to be moved. The defendant's evidence was that these cabinets were never delivered except for one piece which was placed with the cabinets for another house, and that there was no request nor reason for delay in installation. There is no explanation in the evidence as to the house for which the other range hood was intended or as to the cause of its disappearance. There is no dispute, however, as to two range hoods being missing or as to the accuracy of the item of $56.10 representing two range hoods as stated in plaintiffs' account.

With respect to the garage doors, the order stated "w/installations". These doors were unvarnished and unpainted, and they were to be hung by the plaintiffs' subcontractor, after which they were to be painted and finished by the defendant. The plaintiffs' evidence was that their deliveryman

unloaded the doors and placed them inside a building out of the weather. The defendant's evidence was that these doors were unloaded out in the open spread over an area of approximately forty square feet. After they were delivered, the defendant made no effort to protect the garage doors from the weather. The plaintiffs' evidence also was that the defendant requested that installation be delayed until some cement was poured and because three of the six houses involved weren't quite ready for the installation although the other three were. Defendant's evidence was that he demanded several times that plaintiffs hang the doors and was assured that they would be hung in a few days. He denied the three houses were not ready although his carpenter foreman admitted the three were not ready on the day the doors were delivered, but stated they were ready soon after that, and that the plaintiffs thereafter repeatedly refused to install these doors. Between the date of delivery and the time the doors were hung the cardboard cartons containing the doors fell apart because of the rain and snow and the doors swelled, became discolored, cracked, rough, and unusable. They had to be re-sanded and refinished before they could be painted. Plaintiffs' subcontractor billed the plaintiffs for five door installations, and the evidence of their salesman was that these five were actually installed by the subcontractor. A credit on plaintiffs' statement of account was given the defendant for the installation of one door. Defendant's evidence was that the installation subcontractor installed only four doors and that he had to install two of the doors. Plaintiffs also furnished three low headroom kits and there was a dispute in the testimony as to whether or not these kits were actually necessary to install the doors and whether they were actually used. Defendant's carpenter foreman testified the kits were not used and were never delivered. Four of the doors were paid for but two of them were not paid for as they were in such bad condition that even after defendant re-sanded and refinished them he had to give a pur-

chaser of one of the houses on which such a door was installed a credit of $110.00. He arrived at this sum by adding the cost of the door, $75.00, to the cost of painting, $20.00, and to the cost of taking it down so that the painting could be done, $15.00. His evidence also was that it cost $37.50 to hang the garage door for which he was given no credit by plaintiffs.

The plaintiffs' petition alleged that the total amount due from the defendant was $622.99. From the evidence it appears that this amount is computed as follows: $492.51 for kitchen cabinets; $56.10 for two range hoods; $156.00 for two garage doors for which the defendant refused to pay on the grounds that they had been allowed to lie out in the weather; and $24.48 for three "overhead door kits". Against this total $25.00 was allowed as a credit due to non-installation of cabinets on Lot 16; a $15.00 credit arises from an item that was never explained in the evidence; and a $66.10 credit arises from other services about which there is no dispute. In addition to his answer, the defendant filed a counterclaim alleging that plaintiffs had wrongfully delayed their work of installation of the garage doors and to promptly "perform other work" to the defendant's damage in the amount of $750.00; and that, due to plaintiffs' non-performance, defendant had to secure and pay additional help to perform work which the plaintiffs were required under the contract to do.

■ We will first deal with the plaintiffs' cause of action. The plaintiffs tried this case and have submitted it to this court upon the theory that the issue is whether title had passed to the defendant. As stated in their brief, their position was and is that "Respondent fully performed when the merchandise was delivered to Appellant." In view of the nature of the plaintiffs' action; i. e., an action upon an account whereby they seek payment for items they allege they sold the defendant, the issue of title would not seem determinative. (That would certain-

ly be true had this case been governed by the Uniform Commercial Code. Section 400.2–709 RSMo 1959, V.A.M.S. refers to actions for the price of goods and as Note 1 of the Uniform Commercial Code Comment states, the passing of title is immaterial to a price action.) The determinative issue is not one of sale but a question of contractual compliance; that is, whether the plaintiffs had substantially performed the obligations of their contract and thus be entitled to payment. However, as shown by the quotation from American Jurisprudence appearing later herein, the question of what is here involved may only be an exercise in semantics, the decisive issue being the same regardless of its nomenclature.

As stated in 46 Am.Jur., Sales, § 412, p. 584: "There is a material distinction between an executed and an executory contract of sale in respect of the passing of title to the property from the seller to the buyer. In the case of an executed contract of sale, the title passes, ordinarily, at the time of the transaction, in the absence of any provision to the contrary. *In the case of an executory contract of sale, the title does not pass, ordinarily, until the consummation of the transaction by performance of the terms and conditions of the contract to sell. Stated affirmatively, the title passes to the buyer when the contract becomes executed, in the absence of any intention to the contrary.*" (Emphasis supplied.)

The emphasized portion of the above quotation illustrates the fundamental flaw in plaintiffs' position throughout this controversy. Plaintiffs have always admitted that they were obligated for installation of the items here involved and yet have ignored the fact that this admission makes clear that we are here dealing with an executory contract. The plaintiffs still had an act to perform under the contract. That being so, the title did not pass to the defendant upon delivery of these items to the subdivision as plaintiffs contend, but would pass when the contract became ex-

ecuted; i .e., when the items were installed so that the only act remaining to be performed under the contract was payment according to the terms thereof. It is likewise obvious that until that point was reached the defendant had no duty to pay for these items. It follows then that whether we approach the issue from the standpoint of passage of title or from that of contractual compliance, the result is the same. Title did not pass and neither did the obligation of the defendant to pay arise because the plaintiffs have not fully performed their obligations under the contract.

Perhaps realizing the weakness of their position, the plaintiffs devote a large portion of their brief to the contention that certain acts of the defendant excused the nonperformance of their duty to install. The plaintiffs' argument proceeds in this fashion. With respect to the cabinets and range hoods, they contend we must accept their testimony that a wall of the house on Lot 16 was to be moved delaying installation and, with respect to the garage doors, that installation had to be delayed to allow the defendant to pour concrete. Since the garage doors, cabinets, and range hoods were, as plaintiffs put it, "under the exclusive and complete control" of defendant, they argue that the fact the items were not to be found when, even under plaintiffs' evidence and theory time came for installation, excuses their failure to install and thus they are to be considered as having fully performed. As stated earlier, we make our own independent findings of fact, but even if we were to agree with plaintiffs' statement, we could not accept such a theory. It is based on the same false premise which is basic to plaintiffs' entire position in this case; i. e., that plaintiffs' responsibilities as to these items ceased upon delivery of them to the subdivision. As we have stated earlier, even under plaintiffs' own theory of "title" these items still belonged to the plaintiffs. Absent special conditions of the agreement, or evidence of some other nature showing the defendant had or assumed the duty of caring for these articles after their delivery

to the subdivision (neither of which is claimed by the plaintiffs to be present in this case), the plaintiffs cannot set up as an excuse for their own non-performance the failure of the defendant to care for items belonging not to him but to the plaintiffs. This is especially true in the instant case where such a theory of excused non-performance would in fact be at war with the plaintiffs' basic theory that they had fully performed upon delivery and that these items belonged to the defendant after that occurrence.

■ With respect to the three headroom kits, the testimony offered by the plaintiffs was that they were told by their subcontractor that they were needed. The defendant's testimony was that the headroom kits were not needed and not ordered by him. While we are to defer to the findings of the trial court when the credibility of witnesses is involved, we need not so defer in this instance. This is not a matter of direct contradiction between the testimony given by different witnesses but goes instead to whether there was in fact substantial testimony to support this item in plaintiffs' stated account. It should first be noted that the defendant's testimony was direct and made upon firsthand knowledge whereas the plaintiffs' testimony, while no objection was made, was based solely upon what someone had told the plaintiffs. Even if we were to disregard this obvious difference between the quality of the plaintiffs' and of the defendant's evidence, the defendant still cannot be held financially responsible for the cost of these kits. Defendant's agreement with plaintiffs was for garage doors at a stated price which included installation. Such additional materials as these kits were never within the contemplation of the parties at the time the agreement between them was made. This is made clear by the fact that the agreement is silent as to such matters and by the testimony of the plaintiff, Robert Schott, that he specifically called the defendant about the necessity for headroom kits and was told that they would not be necessary. There is no

evidence the defendant ever, in any way, agreed to or even knew of the order for these kits. In addition, it should be noted that the defendant's evidence was that the kits were never used and never even delivered, and that there is no testimony from the plaintiffs to the contrary. Under these facts the defendant cannot be held financially responsible for the cost of these kits which he never ordered, the use of which he never authorized, and which, in fact, were ordered by the plaintiffs' subcontractor.

■ With respect to the garage doors, an item totaling $156.00 in the plaintiffs' account, the evidence is that these doors were actually used. If that were not the case, the defendant would not be obligated for their cost until the plaintiffs complied with the terms of the contract and installed them. Having used the doors the defendant is obligated for their cost less whatever expenses he incurred in undertaking plaintiffs' obligation to install the doors. There were six doors ordered and the plaintiffs' evidence was that their subcontractor installed five of them. The defendant's evidence was that only four of the doors were installed and that he had to install two of them. The testimony of the parties is diametrically opposed and thus presents a situation where we should defer to the finding of the trial judge who had a superior opportunity to judge the credibility of the witnesses. Accordingly, we will accept, as did the trial court, the plaintiffs' version of this disputed issue and, since the plaintiffs' evidence also was that the defendant was granted credit for the sixth door which their subcontractor did not install, award the plaintiffs judgment for the $156.00 item representing these garage doors as set out in their statement of account.

■ We pass now to the defendant's counterclaim which alleged two items of damage to the defendant. The first of these is that allegedly resulting from the plaintiffs' wrongful delay in installation.

We will cast aside the fact that our credulity, as was that of the trial court, is somewhat strained by the defendant's evidence that he granted a credit of $110.00 due to the appearance of one of these garage doors which cost $78.00 or $75.00 new, and which he testified had been re-sanded, refinished and re-painted. The issue is whether or not the plaintiffs were guilty of wrongful delay in installation and upon that issue the testimony of the parties is diametrically opposed. Again it is a situation calling for the application of the rule of deference. The trial court accepted the plaintiffs' version with regard to any delay that was caused in the installation of these doors and we will not disturb that finding.

The second element of the defendant's counterclaim was his allegation that he was forced to expend additional monies for help to perform work which the plaintiffs were obligated under the contract to perform. We are again back to the garage doors and what we have said earlier herein when considering the item in the account represented by the garage doors from the standpoint of the plaintiffs' cause of action is equally applicable to this allegation of the counterclaim and compels disposition of it adversely to the defendant.

The judgment is reversed and the cause remanded to the trial court with directions to enter its judgment in favor of the plaintiffs and against the defendant on the defendant's counterclaim and in favor of the plaintiffs and against the defendant on plaintiffs' petition in the amount of $156.-00.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. Accordingly, judgment is reversed and the cause remanded to the trial court with directions to enter its judgment in favor of the plaintiffs and against the defendant on the defendant's counterclaim and in favor of the plaintiffs and against the de-fendant on plaintiffs' petition in the amount of $156.00.

ANDERSON, Acting P. J., RUDDY, J., and LACKLAND H. BLOOM, Special Judge, concur.