Theodore R. WEST and Grace Goode,
Appellants,

v.

Ira K. WITSCHNER, J. J. Filsinger and
Doris Filsinger, Respondents.

No. 52965.

Supreme Court of Missouri,
Division No. 2.

May 13, 1968.

Motion to Modify Opinion Denied
June 10, 1968.

Claude L. Schenck, Kansas City, for appellants.

William H. Ergovich, Lynn B. Nelson, Kansas City, for appellants.

HERBERT K. MOSS, Special Judge.

This being a suit in equity to set aside a deed, jurisdiction is in this court as title to real estate is involved. Article 5, Section 3 of the Constitution of Missouri, V.A. M.S.

Plaintiffs' petition in Count 1 prays to set aside a deed signed by Plaintiff, Theodore West, and his wife, to an undivided one-half interest in real property located at 1617 Forest in Kansas City, Missouri, and to strike said deed from the records of the Jackson County Recorder of Deeds'

office, all on the grounds that one William Pine, acting as agent for Defendant Ira K. Witschner, by false statements and representations persuaded Plaintiff Theodore West and his wife Charlene West to sign their names as grantors on a blank printed warranty deed; that Plaintiffs never authorized Pine or anyone else to fill in the blank spaces; that West and wife did not appear before a notary public as purported to acknowledge the deed; that the names of J. J. Filsinger and Doris Filsinger were fraudulently inserted as grantees; and that Filsingers thereafter conveyed the said one-half interest to Defendant Witschner.

Plaintiffs' petition in Count 2 on behalf of Grace Goode prays that an amended judgment decree on September 8th, 1964, in a cause of action filed in the Circuit Court of Jackson County, Missouri, by Witschner after he acquired West's one-half interest and styled "Ira K. Witschner, Plaintiff, versus Grace Goode, Defendant," Case No. 660309, be voided, which decree ordered partition and sale of real estate located at 1617 Forest, Kansas City, Missouri. Count 2 further prays that a certain commissioner's deed be stricken and that title be restored to Goode.

In Count 2 Plaintiff Goode incorporates all allegations in Count 1 and alleges that Witschner listed the above partition suit on July 21, 1964, for trial as a default case, although the cause was at issue, and on July 22, 1964, in Division 6, Circuit Court, Jackson County, a judgment was entered ordering partition, that an amended judgment decree was entered September 8, 1964, that neither Plaintiff Goode nor her attorney were present at the trial, did not receive notice that it was to be tried or that judgment had been entered. Plaintiff Goode alleges the listing of the cause by Witschner for default was in violation of Rule 14 of the Circuit Court, Jackson County, which rule requires a party or attorney listing a cause for trial or for judgment by default, to notify opposing party or counsel, in writing of the listing,

and that Witschner by fraudulent statements and acts deceived the Court (Division 6) in hearing the cause as a default, all of which ultimately resulted in the sale of the real estate to Witschner for a price below its value. In Counts 3 and 4 Plaintiff Goode claims damages and in Count 4 claims punitive damages.

In answer, Defendant Witschner alleges that on November 16, 1964, more than thirty days after judgment for partition was entered, Goode by her attorney, Leona Pouncey Thurman, filed a motion to set the judgment aside on the grounds that Goode had filed an answer, was not in default and had not been notified of the sale. The answer alleges this motion to set aside was heard and overruled on January 8, 1965, and, therefore, the issues in Count 2 were res adjudicata.

This case was tried as an equity case to the Court without jury and the Court made no formal findings of facts or law, nor was the Court requested to do so. The Chancellor at the conclusion of Plaintiffs' evidence sustained Defendant Witschner's Motion for Judgment on Count 1, and overruled the Motion as to Counts 2, 3 and 4 and at the conclusion of all the evidence found Plaintiffs take nothing from the Defendants on all counts. The Court made no order as to Defendant Filsingers, who filed no pleadings, were not represented by counsel and were in default.

The Plaintiffs have appealed, contending as to Count 1, the deed should be set aside as having been procured by fraud; the printed warranty deed form, having been signed in blank, is void; the warranty deed from West to Filsingers should be stricken and cancelled from the records of the Recorder of Deeds for the reason of fraudulent acknowledgement; and that the trial court should have found for Plaintiffs against Filsingers, who were in default. On Count 2, which Count incorporated by reference all allegations in Count 1, the Plaintiffs appeal from the trial court's failure to set aside the judg-

ment in the partition suit, on the ground that this partition suit should not have been heard by the Court as a default. The appeal on Counts 3 and 4 is on the ground the Court erred in failing to enter a judgment for damages as prayed.

The legal description of the real estate located at 1617 Forest, Kansas City, Missouri, is the south twenty-one (21) feet of Lot 24 and the north seven (7) feet of Lot 25, Block 24, Dundee Place, a subdivision in Kansas City, Jackson County, Missouri. Evidence describes this as a lot twenty-eight (28) feet by a hundred and twenty-five (125) feet with a vacant house thereon. Facts from the evidence are that Samantha Birkhead had fee simple title to realty located at 1617 Forest. She died intestate at Kansas City, Missouri, on April 13, 1962; no administration of her estate was had. The property descended to West and Goode, each taking a one-half undivided interest therein. West lived with his wife, Charlene West, at 2438 College, Kansas City, Missouri, and Goode resided at Chicago during the events herein. On December 17, 1963, William Jack Pine contacted West by telephone. Pine wanted to talk to West about the property at 1617 Forest. Pine was unknown to West. Pine arrived fifteen minutes later, alone. West informed Pine he did not have anything to do with the property on Forest. West accepted from Pine a sum of money described as one hundred and fifty or two hundred dollars for his one-half interest in the realty. A general warranty deed form was produced by Pine and West and his wife signed as grantors. At the same time West signed a receipt dated December 18, 1963, which stated "Received of William Pine Two Hundred ($200.00) Dollars, payment in full for warranty deed to my one-half interest to 1617 Forest, Kansas City, Missouri." At the same time West also signed a statement and gave it to Pine, stating that West was the only child of one Theodore C. West, deceased, that said Theodore C. West was the only son of Samantha Birkhead, that Samantha Birk-

head left surviving her only one child, Grace Goode of Chicago, and that Birkhead had no other deceased children, nor any child or children of any deceased child or children. The Wests with respect to Count 1 testified that they did not know the grantees, Filsingers, never appeared before notary public Betty Ann Wilson, nor any other notary to acknowledge their signatures. West claimed he thought signing the deed would help West's cousin get a home on Swope Parkway. The West-to-Filsinger deed and the Filsinger-to-Witschner deed, each recorded December 18, 1963, bore consecutive serial numbers in the Recorder of Deeds' office. Each deed was acknowledged before notary Wilson. The Wests testified they saw "no writing" on the general warranty deed when they signed it.

On receiving title to Wests' one-half interest, Witschner filed against Goode a petition for finding heirship and in partition, Case No. 660309 in the Circuit Court, Jackson County, Missouri, naming Goode as Defendant, all of which is the subject of Count 2. Value of the real property was variously described in the testimony to be from six hundred dollars to ten thousand dollars. At the time of the trial the house had been condemned and ordered wrecked by the City of Kansas City and had been vacant and vandalized.

Although not making formal findings, the Court expressed its opinion at the conclusion of the Plaintiffs' evidence on Count 1 as follows: "Plaintiff West does have the burden of proof, and regardless of what the cases have said in the matter of fraud that the proof must be clear, cogent and convincing and so as to leave no room for doubt in the mind of the Chancellor, we needn't go to any such extraordinary burden of proof as a test of whether he has made a case. By the simplest test of preponderance of the evidence he has failed to make a convincing case that the Defendant Witschner or any agent of the Defendant Witschner by fraudulent misrepresentations induced him to execute a warranty deed. He and his wife under their own

testimony clearly understood that they were signing a deed of some sort. The testimony that they were aiding a cousin in some remote way is preposterous and unbelievable and cannot be accepted by the court. It is completely at variance and at war with a receipt that was signed and with the statement of genealogy as it has been referred to. The testimony of the ex-wife was somewhat unusual in the change that occurred in such testimony between the time before the recess and the time after the recess. Her credibility was considerably impaired by the shifting of the testimony with regard to that matter." (The "shift" in testimony concerned her identification of West's signatures on the receipt and on the genealogy statement.)

■ In equity suits it is well established the reviewing court, although not bound thereto, will defer to a large extent to the findings of the Chancellor, but, nevertheless, will come to its own conclusion on the evidence in the record, de novo, and it is the primary duty of the reviewing court to make its own determination of the facts on the record, de novo. The findings of the Chancellor on the facts will not be disturbed unless clearly erroneous, taking into consideration the trial judge's advantage in having heard and observed the witnesses. The reviewing court will defer to the findings of the trial court where sharply contradicting oral testimony does not preponderate one way or the other. Cleary v. Cleary, Mo., 273 S.W.2d 340. The Supreme Court is not bound to accept the Chancellor's view where evidence was not conflicting. McDonald v. Rumer, 320 Mo. 605, 8 S.W.2d 592; in equity suits the Supreme Court makes its own finding of facts unless its mind runs in the same channel as that of the Chancellor below on the facts, or unless they are close and conflicting. Plemmons v. Pemberton, 346 Mo. 45, 139 S.W.2d 910; Welsh v. Veasley, 286 Mo. 93, 227 S.W. 58; while the reviewing court will defer to findings of the trial court where credibility of witnesses is in-

volved, the reviewing court need not do so where a disputed question is not a matter of direct contradictions by different witnesses. Schott v. Bruce, Mo.App., 407 S.W.2d 61; however, the fact that witnesses were not contradicted is not decisive of the weight to be given to the evidence. Mueller v. Mueller, Mo., 318 S.W.2d 365.

The testimony is clear that at the time West signed the deed, he also signed the receipt that he had received payment for two hundred dollars from Pine for West's one-half interest in the realty. West testified he knew the money he received from Pine was for his interest in the property. West, when he signed the deed, also signed the statement of genealogy of Samantha Birkhead, reflecting that West and Goode were the only heirs of Birkhead. West had a tenth grade education, was honorably discharged from the United States Army as a staff sergeant. He testified his IQ was 105 and at the time of the trial was employed by the Kansas City Fire Department, having passed an intelligence test for the job. His wife, Charlene, had a seventh grade education.

■ This reviewing court, after examination of the Plaintiff's testimony on Count 1, reaches the same conclusion as that of the trial court and holds that Plaintiff West failed to carry the necessary burden of proof on his allegation that Pine, by false statements and misrepresentations, persuaded West and wife to sign the deed.

The trial court, as Respondent points out in his brief, seems to have grounded its ruling on Count 1 at the close of Plaintiffs' case, not on the legal deficiencies, if any, in the instrument, but on the concept Plaintiffs failed to carry the burden to prove fraud. We cannot from the record determine whether the trial court on Count 1 found Plaintiffs had failed to prove the warranty deed was signed in blank or if finding it was signed in blank, under the facts and law, held there was a valid conveyance.

West and wife were the only witnesses who testified relative to the signing of the deed and its contents. Pertinent testimony of the wife includes the following:

"Q Now, at the time you placed your signature on this instrument, can you tell the Court whether or not there was any writing or anything on this instrument at all other than your husband's signature? A My husband's signature was all, because I looked at it. It was folded and I opened it up and looked at it and it wasn't—wasn't none of this in there (indicating), the stamp, wasn't nothing on it. Q There wasn't any writing in this deed at all, Exhibit No. 17, at the time you put your signature, other than your husband's signature? A No, the stamp, nothing else, whatever that is. Q Are you telling the Court this instrument was in blank at the time you put—was just a blank deed at the time you put your signature on it? A Yes, I am. Q Why did you open it up? You said it was folded. A I don't know, I just looked— I don't know. I got a habit of looking at what I sign. I just opened it up. Q Now, at the time you signed this instrument—A Didn't have nothing on it to read, so I didn't read it. Q Didn't have anything on it to read? No. If it had something on it to read, I would read it. I got a habit of reading what I sign. Q And did you make any request or give any instructions to anybody to fill in this document—A No, I didn't. Q Let me finish my question. To fill in the document with the name of J. J. Filsinger and the legal description shown therein? A No, I didn't. I wouldn't even know the legal description of the house. Q You didn't know it? A No, I don't. Q But you didn't authorize anybody to put anything in this instrument at all, is that what you are telling the Court? A Yes, I am."

On cross-examination she testified as follows:

"Q Now, you say this thing was blank. You didn't know—there wan't anything on it? A There wasn't. Q Did you see the printing on it? A Yes, I seen the printing on it but there wasn't no writing where nobody else had written on it."

Plaintiff West testified as follows:

"Q Now, at the time Mr. Pine handed you this document or piece of paper, whatever you want to call it, which has been marked as Exhibit No. 17, how was it, was it straight out, or was it folded, or what? A I believe it was folded. Q Can you fold the document as it was when you received it, when you received it from Mr. Pine? A (witness complies) I believe it was folded like this (indicating). Q You are handing this to me, showing the bottom fourth of this piece of paper as visible? A Yes, sir. Q Now, was there any notations above on this bottom part of the paper at the time you put your signature on the paper? A No, sir."

On cross-examination Plaintiff West testified:

"Q And you say you never did see this warranty deed only the part where the signature is? A I testified that I didn't I could have had that opened but I knew it was a blank form. Q Well, now, you are testifying that you did open it or you didn't? A I don't remember. I could have had it opened, but I know it was blank. Q Are you telling the Court the man presented you this folded over just with a place for signature—A That is true. Q And you signed it? A Yes, sir. Q And you are telling the Court you went in the kitchen outside the presence of this man—A That's right. Q And you still didn't open the deed, is that correct? A I said I could have had it open. Q Well, do you remember? A I don't remember. I testified that I never had it open, but I could have had the deed open. My wife said she had it open. Q You testified you never had

it open but you could have had it open?
A I could have had it open. Q It could
have been a deed with writing on it and
you didn't know it because you never
opened it? A It never had any writing.
Q If you didn't open it, how do you
know? A Well, I don't know. Q
Now, did Mr. Pine tell you not to open
this? A No, no, he did not."

Both West and wife testified they had
not appeared before notary public Betty
Ann Wilson, on December 18, 1963.

The testimony on behalf of the Plaintiffs,
if believed, would establish that the Wests
signed the deed in blank, that the Wests
did not authorize anyone to fill in any
blanks on the deed, and that the Wests did
not appear before notary public Betty Ann
Wilson on December 18, 1963, for ac-
knowledgement of their signatures. The
question now is whether such a deed, blank
on delivery except for the signatures of
the grantors, without acknowledgement by
grantors, is a valid deed.

It should further be noted, evidence on
behalf of Plaintiffs on Count 1 was that
on Plaintiffs' deed to Filsingers dated
December 17, 1963, Filsingers' address as
stated was the same as the business address
of Witschner; that Filsingers' deed to
Witschner was dated December 18, 1963;
that Wilson, notary on both deeds on De-
cember 18, 1963, was an office associate of
Witschner for eight years; that Wests did
not appear before Wilson; that Witschner
over the years had various deals with
Filsinger, in which Pine was also involved,
usually Witschner's deals having been di-
rectly with Pine. There is no dispute the
legal description in the deed is that of the
realty at 1617 Forest.

Authorities cited by Defendants, in
fact, relate to situations in which a deed
otherwise complete, is blank with respect to
names of grantees. It is true that equitable
title may pass by delivery of a deed execut-
ed in blank as to the name of the grantee.
Ridenour v. Duncan, Mo., 291 S.W.2d 900;
23 Am.Jur.2d, Deeds, § 55; 175 A.L.R.
1297; In re Henderson's Estate, 128 Cal.
App. 397, 17 P.2d 786; Kindred v. Crosby,
251 Iowa 198, 100 N.W.2d 20; Fulton v.
McCullough, 232 Iowa 1220, 7 N.W.2d
910; equitable title to real estate passes by
the delivery of a deed, blank as to the name
of the grantee to a purchaser for valid con-
sideration. 175 A.L.R. 1297; Gilbert v.
Plowman, (1934) 218 Iowa 1345, 256 N.W.
746; Nebraska Wesleyan University v.
Smith, (1925) 113 Neb. 208, 202 N.W. 625.

The courts following this rule apparently
consider the delivery of a deed in blank to
the grantee carries with it implied authority
to fill out his own name or in the name of
his grantee or purchaser. Kindred v. Cros-
by, supra; also, Stover v. Snow, 315 Mo.
1046, 287 S.W. 1042; Holliday v. Clark,
Mo., 110 S.W.2d 1110. The effect of such
a transaction is to vest irrevocable power,
coupled with an interest in the person to
whom the deed is delivered and title passes
with this delivery. Womack v. Stegner
(Tex.Civ.App.), 293 S.W.2d 124.

A *blank* deed signed by grantor,
not acknowledged before a notary public as
purported, is void, even as to innocent
third parties. Hulburt v. Walker, 258 N.Y.
8, 179 N.E. 34; a description incomplete at
time of delivery and not filled in before de-
livery is void. Republic National Bank of
Dallas v. Eiring, (Tex.Civ.App.) 240 S.W.
2d 414. It is a well-nigh universal rule that
in order to be valid as a conveyance, a
deed must either contain such description
of the land to be conveyed as it can be
properly identified or else must contain
reference to another instrument which does
include a sufficient description. Stated
otherwise, a deed executed in blank is void,
for the reason it lacks a subject matter
upon which it can operate. "Filling in a
description stands upon an entirely differ-
ent footing from that of filling in the name
of a grantee in a deed otherwise lawfully

executed. In the latter instance, the grantor has fully indicated his intention to divest himself of his title to certain definitely described property, and the filling in of the name of the grantee may be said to be but the fulfillment of that intention; in the former instance no such intention is indicated nor can it be inferred." Barth v. Barth, 19 Wash.2d 543, 143 P.2d 542, 549. There appears to be no conflict that blank deeds are void and do not convey any interest or title. Utah State Building & Loan Ass'n v. Perkins, 53 Utah 474, 173 P. 950; George v. Manhattan Land & Fruit Co., 5 Cir., 51 F.2d 28; Saulsberry v. Saulsberry, 6 Cir., 121 F.2d 318; Boyd Lumber Co. v. Mills, 146 Ga. 794, 92 S.E. 534, L.R.A.1918A, 1154; 4 Tiffany Real Property, 3rd Edition, § 990; 8 Thompson Real Property, Permanent Edition, § 4225 (see also 8 Thompson Real Property, 1963 Edition, § 4275. In the Boyd case, supra, the court noted that a deed signed, sealed and delivered with understanding that agent of grantee to whom delivery was made might thereafter insert description and did so, that such deed is void; citing Gilbert v. Anthony, 1 Yerg. (Tenn.) 69, 24 Am.Dec. 439, and quoting from such: "Deeds are evidence of a higher nature than parol contracts, and there are great and important distinctions between the operation and effect of these different species of contracts. The reason of which is that the first are supposed to be made upon greater deliberation and with greater solemnity; they are first to be written, by which they are exempted from that uncertainty arising from the imperfection of memory to which unwritten contracts must always be exposed; they are then to be sealed by the party bound, and, lastly, to be delivered by him, which is the consummation of his resolution; none of this deliberation, and little of this solemnity is to be found in the signing and sealing of a blank piece of paper, on which anything may afterwards be written, and whether with or without the consent of the person who signed it must depend entirely on oral testimony, subject not only to the uncertainty arising from the imperfection of human memory, but exempted from those checks on perjury which would exist in the case of a deed regularly executed, which could only be altered by erasure or interlineation." A blank deed is void. 8 Thompson Real Property, 1963 Edition, 4275; 26 C.J.S. Deeds § 33. A blank deed with only signatures of grantors is void. Samuel v. Frederick, Mo., 262 S.W. 713.

■■■ A deed is inoperative to convey any property where it is delivered in blank as to the land intended to be conveyed and no authority is given to the grantee to fill in the descriptive data. There is no implication of authority to fill in a description of property from the mere fact of possession of a deed signed in blank by the grantor. 23 Am.Jur.2d, Deeds, § 221. The mere fact that the description inserted in a blank deed after delivery is the description of the property which the grantors had in mind at the time the deed was signed, is not sufficient to validate a deed in fact signed in blank. Dahlberg v. Johnson's Estate, 70 Idaho 51, 211 P.2d 764, 11 A.L.R.2d 1365.

The Defendants did not put on any testimony on Count 1 and it would appear the evidence on this issue as to whether the Wests signed the deed in blank has not been fully developed. Count 1 is reversed and remanded on the issue of whether the Wests signed the deed in blank.

Again the testimony on behalf of Plaintiff West, at the close of his evidence on Count 1, if believed, would establish West and his wife never appeared before Betty Ann Wilson or any notary. Appellants now contend, with respect to Count 1, the warranty deed from Wests to Filsingers should be ordered stricken from the records of the Recorder of Deeds, County of Jackson, for the reason the acknowledgement by the notary public was not taken in compliance with the law and was a fraudulent acknowledgement and that the trial court erred in finding for Defendants.

Appellants and Respondents each cite Robb v. N. W. Electric Power Cooperative, Mo., 297 S.W.2d 385; Hardt v. Phillips Pipe Line Co., Mo.App., 85 S.W.2d 202, and Carson v. Woods, Mo., 177 S.W. 623. Respondents also cite Cook v. Newby, 213 Mo. 471, 112 S.W. 272.

In the Robb case, this court after thoroughly discussing the Hardt and Carson cases laid down the rule, "Where the right is executory, and the instrument securing and evidencing it is materially altered by one having a beneficial interest therein, that instrument, as evidence of the right therein described, is destroyed, but where the instrument merely evidences an executed transaction and is a memorial of it, the rights which vested by virtue of that transaction in the person who then materially alters the instrument are not thereby destroyed or divested, although the material alteration may destroy the instrument as to any executory features therein." This court in the Robb case, after finding from the evidence that the acknowledgement to an easement deed was fraudulent (the evidence was that the grantors signed the deed and had delivered it to an agent of grantees), ruled that grantors were not entitled to set aside the transfer of title to grantees, but that they were entitled to have the instrument removed from the records of the Recorder of Deeds.

■ Upon the authority of the Robb case, we now also reverse and remand Count 1 for new trial on the issue whether the Wests acknowledged the deed before notary Betty Ann Wilson, however, we note on retrial this issue may not in and of itself be determinative of the rights between the parties.

The Appellants further contend with respect to Count 1 the trial court erred in failing to find for Plaintiffs, as far as Defendants Filsinger are concerned, for the reason these Defendants were in default, never having pleaded to Plaintiffs' petition.

Appellants cite Missouri Rule of Civil Procedure 74.045, V.A.M.R., which provides an interlocutory judgment shall be given by default against a defendant who shall fail to file his answer or pleading within the time prescribed by law. Respondents cite Rule 74.08 which provides where there are several defendants, some appearing and others defaulting, an interlocutory judgment by default may be entered against those who make default, and the cause may proceed against the others, and one final judgment shall be given.

■ Again, we must refer to the state of this case at the close of Plaintiffs' evidence on Count 1; the finding of the trial court of the issues against Plaintiff West and for Defendant Witschner; that Plaintiffs had failed to carry the necessary burden of proof of their allegations in Count 1. We rule under these facts on appeal to this court, the trial court did not abuse its discretion under Rule 74.08 in not entering a default judgment against Defendants Filsinger, however, we note on retrial the situation may be entirely different and we are not now ruling the issue should Plaintiffs carry the necessary burden on retrial.

With respect to Count 2, Appellants urge the court erred in failing to set aside a judgment entered in cause numbered 660309, styled Ira K. Witschner, Plaintiff v. Grace Goode, Defendant, on the ground Defendant Goode had filed her answer in that cause and thereafter said cause should not have been heard by the court as a default. It should again be noted in Count 2 of our case here under consideration, Plaintiff Goode as Plaintiff incorporated by reference all allegations contained in Count 1.

Some time prior to May 13, 1964, Witschner filed suit number 660309, Division 6, Jackson County Circuit Court, against Goode for determination of heirship and for partition. Witschner's interest came from the Wests through Filsingers as detailed

herein in the discussion on Count 1, and Witschner prayed for partition and sale and to award him a one-half interest in the proceeds in accordance with his claim to a one-half undivided interest. Goode received the summons by mail service on May 13, 1964, at her home in Chicago, Illinois. This summons in the usual form ordered Goode to serve a copy of her pleading on Plaintiff's attorney within 30 days or else judgment by default would be taken. On May 15, 1964, the registered mail receipt was filed in the office of the Circuit Clerk of Jackson County, Missouri. On May 28, 1964, Goode came to Kansas City and retained Mrs. Leona Pouncey Thurman as her attorney and paid her $100.00 in cash. Goode's answer was due to be filed on or before June 14, 1964, but was not filed by that date. Witschner wrote a letter to Mrs. Thurman on June 17, 1964, asking her to file an answer and if he did not hear from her "on or before the 23rd of this month, I will assume you are not interested in the case". On June 23, 1964, Mrs. Thurman filed an answer, by leave of court, but failed to certify in the lower left-hand corner of the answer that she had sent a copy to Lynn B. Nelson, attorney for Witschner. A carbon copy of a transmittal letter, purportedly enclosing a copy of the answer and dated June 23, 1964, from Mrs. Thurman to Nelson was introduced at the trial but Witschner denied receipt of same or of the answer. Nelson listed the case for default on July 21, 1964, the case was assigned to Division 6 on July 21, 1964, and on July 22, 1964, Witschner, representing himself, appeared before Judge Joe McQueen and a default judgment was entered, determining that Goode owned one-half of the real estate and the property was ordered partitioned by sale. Mrs. Thurman was abroad and not present when the default judgment was taken. The answer was on file showing the stamp of the Circuit Clerk dated June 23, 1964.

Witschner in the cause now before this court testified as follows: Judge McQueen commented, "Mrs. Pouncey has filed an answer here. Did you know about it?" Witschner said "No." Judge McQueen said, "Well, apparently she hasn't complied with the rules. There isn't any certification on here as to mailing it to you. She simply hasn't complied with the rules. Proceed." The testimony of the hearing as reported by the court reporter fails to disclose any remark by Judge McQueen respecting the answer as claimed by Witschner. There is some conflict in Witschner's testimony and his deposition as to whether or not Witschner was on the witness stand when the remarks in question were made by Judge McQueen. An amended judgment was entered on September 8, 1964, and the special commissioner's final report of sale was filed and approved and he was discharged on November 12, 1964.

On November 16, 1964, Mrs. Thurman filed a motion to set aside the default partition judgment on the very grounds here set forth in our Count 2 and on January 8, 1965, the motion was argued by counsel Mrs. Thurman and Nelson and overruled. No appeal was taken from that action. The commissioner's check in the sum of $229.37 for her half interest was mailed to Goode; she returned same to the commissioner, not cashing it. Mrs. Thurman testified by deposition, being in California at time of trial of our case here at bar.

Appellants point out Goode's counsel was never notified the cause was listed for trial as required by rules of the Circuit Court of Jackson County, Missouri, citing Rule 14, which states in part that attorneys listing a case for judgment by default shall notify the opposing counsel in writing of the filing of said listing. The thrust of Appellants' argument is against the credibility of Witschner's testimony as to the alleged comments of Judge McQueen; also that the Daily Record, a medium used by the Circuit Courts of Jackson County for transmitting Notice of Orders in pending cases, did in fact carry Notice of the Order granting leave to Goode to file her

answer, citing Bindley v. Metropolitan Life Insurance Co., Mo., 335 S.W.2d 64, as to the duty of a party to keep abreast of all proceedings in his case until final judgment.

The trial court held the "evidence does not justify any finding that any fraud had been practiced by the defendant Witschner against the plaintiff Grace Goode." The court also found "the consideration received (by Goode) through partition was not an inadequate consideration."

■ The rule in Cleary v. Cleary, supra, is that the findings of the chancellor on the facts will not be disturbed unless clearly erroneous, taking into consideration the trial judge's advantage in having heard and observed the witnesses; the reviewing court will defer to the findings of the trial court where sharply contradicting oral testimony does not preponderate one way or the other. See also Dixon v. Kinker, Mo.App., 410 S.W.2d 347, which holds the appellate court is given the privilege of deferring to the trial court's superior opportunity to judge the credibility of the witnesses upon matters involving disputed testimony. Upon such authorities, and after a review of the testimony, this court now affirms the findings of the trial court for Defendant Witschner on those allegations in Count 2 averring that Witschner by fraud had secured the default judgment and had purchased Goode's interest for an inadequate consideration; however, Count 2 is reversed and remanded only on the issue in Count 2 as to whether the Wests signed the deed in blank and on the issue whether or not the Wests appeared before notary public Betty Ann Wilson.

Appellants next contend the court erred in failing to render judgment for Plaintiff Goode on Count 3, which Count incorporates by reference allegations contained in Counts 1 and 2 and prays damages against Witschner in the sum of $1600.00 sustained as a result of "the aforesaid actions, misrepresentations, fraud and deceit of" the Defendant Witschner; also that the court erred in failing to render judgment for Plaintiff Goode on Count 4, which Count incorporates by reference all allegations contained in Counts 1 and 2 and prays punitive damages against Witschner because she was damaged by "the fraud, deceit, willful and malicious acts and misrepresentations of" Witschner.

■ This Court has earlier in this opinion sustained the trial court on Counts 1 and 2 except on the issue whether the Wests signed the deed in blank and on the issue of the acknowledgement and has sustained the trial court's findings in both Counts 1 and 2 with respect to alleged fraud by Defendant Witschner. As Plaintiff Goode's damages against Witschner in Counts 3 and 4 are alleged to be a direct result of Witschner's fraud, we now hold the trial court did not err in rendering judgment for Defendant Witschner on Counts 3 and 4.

This cause is reversed and remanded on Counts 1 and 2 on the issue whether the Wests signed the deed in blank and on the issue whether the Wests appeared before notary public Betty Ann Wilson for acknowledgement of their signatures; that part of the judgment herein affirmed on Counts 3 and 4 should be held in abeyance until the entire case is disposed of.

All of the Judges concur.